# DECISIONS

## OF THE

## APPEALS COURT

### OF

## MASSACHUSETTS

COMMONWEALTH *vs.* DARRYL M. HENLEY.

No. 03-P-1206.

Norfolk. November 16, 2004. - February 11, 2005.

Present: PERRETTA, GRASSO, & MILLS, JJ.

*Controlled Substances. Search and Seizure,* Impoundment of vehicle, Inventory, Motor vehicle. *Practice, Criminal,* Assistance of counsel.

A Superior Court judge properly denied a criminal defendant's motion to suppress evidence of drugs found pursuant to an inventory search of the impounded rented vehicle in which the defendant had been riding, where the impoundment of the vehicle met constitutional strictures in that towing the vehicle, which was stopped in the breakdown lane of an interstate highway without an authorized driver present and able to remove it from the roadway, thus posing a safety hazard, was the only practical available alternative for police, and where the discovery of the contraband met constitutional requirements. [4-6]

A criminal defendant's trial counsel's tactical judgment in cross-examining a particular witness was neither inexplicable nor manifestly unreasonable such as would substantiate the defendant's claim of ineffective assistance of counsel. [6-10]

INDICTMENTS found and returned in the Superior Court Department on June 14, 2000.

A pretrial motion to suppress evidence was heard by *Nonnie S. Burnes*, J., and the cases were tried before *John C. Cratsley*, J.

*Daniel R. Katz* for the defendant.

*Tracey A. Cusick*, Assistant District Attorney, for the Commonwealth.

GRASSO, J. On appeal from his convictions of trafficking in more than two hundred grams of heroin and of cocaine, and possession of marijuana with intent to distribute, the defendant, Darryl M. Henley, challenges (1) the impoundment and subsequent inventory search of a rented motor vehicle in which the stash of drugs was found; and (2) the effectiveness of his trial counsel. We conclude that the impoundment of the vehicle and subsequent search and seizure of drugs was constitutionally proper and that the defendant's lawyer did not render ineffective assistance of counsel. Accordingly, we affirm.

1. *The motion to suppress.* We summarize the facts from the motion judge's findings and undisputed testimony presented at the hearing on the motion to suppress. See *Commonwealth* v. *Hinds*, 437 Mass. 54, 55 (2002), cert. denied, 537 U.S. 1205 (2003). We reserve discussion of the facts presented at trial for consideration in connection with the ineffective assistance of counsel claim. See *Commonwealth* v. *Deramo*, 436 Mass. 40, 43 (2002) (in reviewing motion to suppress appellate court may not rely on facts developed at trial).

At 2:00 A.M. on January 4, 2000, while driving northbound in an unmarked vehicle on Route 95 in Canton, State Trooper Michael Lynch observed a vehicle approaching from behind that was drifting between lanes and traveling at a high rate of speed. Lynch pulled into the breakdown lane and allowed the vehicle to pass. He then reentered the travel lane and followed the vehicle, clocking it at eighty to ninety miles per hour as it continued to swerve in and out of the marked lanes.

Suspicious that the operator might be under the influence, Lynch stopped the vehicle. Inside were three individuals. In

response to Lynch's request, the operator produced an expired temporary license that identified him as Darron Hurt. Instead of a registration, Hurt handed Lynch a rental agreement from Avis Rent-A-Car Systems, Inc. (Avis).

Lynch ordered Hurt to step out of the vehicle and perform field sobriety tests; Hurt completed them to Lynch's satisfaction. Lynch then turned his attention to the Avis rental agreement. He noted that the agreement was between Avis and Dagney Hall of Jamaica Plain and that, according to the agreement, Hall was the only person authorized to drive the vehicle.[1] At Lynch's request, the front seat passenger identified herself as Nikeisha Davis and the defendant, who was sitting in the back seat, identified himself as Darryl Henley. Lynch returned to his cruiser to call in the information and request backup. In response, he learned that Hurt had a revoked license and two outstanding default warrants and that both Davis and the defendant had valid licenses.[2]

Lynch returned to the vehicle, arrested Hurt, and placed him in the back of the cruiser. As he did so, Lynch observed that Davis's pants were unsnapped at the waist. He also observed that both Davis and the defendant appeared markedly more nervous. Lynch ordered Davis out of the vehicle and directed her to remove her coat and pull her pockets out to determine whether she was carrying any objects that might be of concern.[3] Finding nothing of significance, Lynch turned his attention to the defendant, who was conversing with Trooper David Rea, who had just arrived. Lynch ordered the defendant to step from the vehicle and performed a patfrisk that disclosed no weapons or contraband. Once the frisk was complete, he directed the defendant to sit on the guardrail.

Lynch then prepared to have the vehicle towed. Although both Davis and the defendant were licensed drivers, neither was

[1]The agreement stated, "[n]o additional operators are authorized or permitted without Avis' prior written approval in accordance with the terms and conditions of the rental agreement or applicable state law."

[2]Lynch also learned that the defendant had a lengthy criminal history and had recently been released from prison after a murder conviction.

[3]Lynch did so because he did not want to pat-frisk a female.

listed as an authorized driver on the rental agreement. Hall, the only authorized person, was not present.[4]

After performing an inventory of the passenger compartment, Lynch took the vehicle's keys and walked toward the trunk. When the defendant asked Lynch what he was doing with the keys, Lynch replied that he was going to inventory the trunk. The defendant became increasingly agitated. He stared at the trunk and stated, "You're not playing by the rules. You can't do that, it's illegal."

Lynch opened the trunk and placed the keys on the inside lip. At that point, the defendant, who was still sitting on the guardrail, reached over and slammed the trunk shut, leaving the keys inside. After a brief verbal exchange with the defendant, Lynch opened the trunk using the release button inside the passenger compartment. When Lynch returned to the trunk, he immediately smelled a strong odor of marijuana and saw a partially opened green backpack, some shopping bags, and a scarf wrapped around a plastic freezer baggie. Lynch picked up the scarf and saw that the baggie contained a large amount of what appeared to be marijuana. He advised the defendant and Davis that they were under arrest.

Before Lynch could restrain him, the defendant jumped from the guardrail and began running up the breakdown lane. After a lengthy foot chase, the defendant escaped by running across the travel lane into the wooded median strip where Lynch lost sight of him.[5] The police then towed the vehicle to the Foxborough barracks where Lynch found almost three kilograms of cocaine, over twenty-nine grams of heroin, and approximately ten ounces of marijuana in various packages.

The defendant properly does not challenge the initial stop of the vehicle, which was speeding and swerving between the travel lanes. See *Commonwealth* v. *Santana*, 420 Mass. 205, 207 (1995) (observed traffic violation justifies initial stop); *Commonwealth* v. *Ciaramitaro*, 51 Mass. App. Ct. 638, 643 (2001). His sole contention is that the discovery of the contraband violates constitutional requirements because the

[4]Prior to Lynch's decision to impound the vehicle, one of the occupants told him that Hall was the defendant's girlfriend.

[5]A search of the area by other officers and a K-9 unit was unsuccessful.

decision to impound the vehicle was constitutionally flawed.[6] "Under both the Federal and Massachusetts Constitutions, analysis of the legitimacy of an inventory search of an impounded vehicle involves two related, but distinct, inquiries: (1) whether the impoundment of the vehicle leading to the search meet constitutional strictures, and (2) whether the conduct and scope of the search itself meet those strictures." *Commonwealth* v. *Ellerbe*, 430 Mass. 769, 772-773 (2000). See *Commonwealth* v. *Brinson*, 440 Mass. 609, 612 (2003) (lawfulness of inventory search contingent on propriety of impoundment). Accordingly, we consider the propriety of the impoundment decision.[7]

The defendant maintains that because both he and Davis were licensed drivers, and not under any disability, the police had a practical available alternative to towing that invalidates the impoundment decision. We reject this proposition. Here, a motor vehicle was stopped in the breakdown lane of an interstate highway at 2:00 A.M. without an authorized operator present and able to remove it from the roadway. See *Commonwealth* v. *Muckle*, 61 Mass. App. Ct. 678, 682 (2004). In these circumstances, the police had no discretion to exercise because the situation posed a safety hazard that made towing the only practi-

[6]We pass over, without deciding, whether the defendant had a reasonable expectation of privacy in the trunk of a vehicle that he did not own and was not authorized to operate, where the authorized operator was not even present. See *Commonwealth* v. *D'Onofrio,* 396 Mass. 711, 714-715 (1986); *Commonwealth* v. *Carter,* 424 Mass. 409, 411-412 (1997) (defendant has the burden of establishing that the government has intruded on his or her reasonable expectation of privacy, thus establishing that a search has taken place).

[7]At the motion hearing, but not on this appeal, the defendant argued that the State police's written guidelines for impoundment are constitutionally insufficient because they permit the officer to exercise discretion in the impoundment decision. The motion judge concluded that State Police General Order TRF-09, which was introduced at the motion hearing but is not part of the record before us, established written guidelines for impoundment. Those guidelines require that police tow a vehicle (1) if the operator was physically arrested and the vehicle would be left unattended; or (2) if the vehicle was taken without the owner's consent. The motion judge concluded that because the police had no practical alternative to towing the vehicle, there was no need to analyze the constitutional sufficiency of the alternatives contained in the written impoundment procedures. See *Commonwealth* v. *Ellerbe,* 430 Mass. at 774.

cal available alternative.[8] See *Commonwealth* v. *Ellerbe*, 430 Mass. at 774. See also *Commonwealth* v. *Caceres*, 413 Mass. 749, 750-753 (1992); *Commonwealth* v. *Daley*, 423 Mass. 747, 750 (1996); *Commonwealth* v. *Dunn*, 34 Mass. App. Ct. 702, 703 (1993).

We decline to impose on police a constitutional obligation to telephone Avis at that hour of the morning. Even less persuasive is the defendant's suggestion that police should have awakened Hall to obtain her permission. Moreover, neither alternative would have resulted in anything other than an oral authorization of uncertain validity where the rental agreement specifically required Avis's written permission.

Because Lynch properly impounded the vehicle, the discovery of the contraband met constitutional requirements. Lynch commenced the inventory search in accordance with written State police policies. When he opened the trunk, a strong odor of marijuana emerged that provided probable cause to believe that the motor vehicle contained contraband, to arrest the occupants, and to conduct an investigatory search of the vehicle and its contents. See *Commonwealth* v. *Motta*, 424 Mass. 117, 123-124 (1997) (probable cause and inherent mobility of automobile justified warrantless search of vehicle stopped in public place). That the police towed the vehicle to a position of safety before conducting the warrantless search does not alter the equation. *Ibid.* See *Commonwealth* v. *Markou*, 391 Mass. 27, 30 (1984); *Commonwealth* v. *Lara*, 39 Mass. App. Ct. 546, 548 (1995).

2. *Ineffective assistance of counsel.* At trial, the Commonwealth introduced the circumstances of the stop, the defendant's behavior before and after the discovery of the drugs in the trunk, and his flight and escape across the highway. As further evidence of consciousness of guilt, the Commonwealth presented testimony that when apprehended in Portsmouth, Virginia, in June, 2000, the defendant had in his possession a North Carolina identification bearing his picture, but the name Troy Wiggins. To establish that the defendant possessed the

---

[8]The result would be no different were we to consider the impoundment decision under the community caretaking function. See *Commonwealth* v. *Brinson*, 440 Mass. at 615-616; *Commonwealth* v. *McDevitt*, 57 Mass. App. Ct. 733, 736 (2003).

contraband found in the trunk with the intent to distribute, the Commonwealth called State police Sergeant Richard Noone as an expert in drug investigations and the drug trade. Unremarkably, Noone opined that the amount and value of the drugs seized from the vehicle was consistent with distribution rather than personal use.

The defendant now contends that his trial counsel was ineffective because during cross-examination of Noone, counsel opened the door to the jury learning about a search of an apartment the defendant shared with Hall, conducted pursuant to a search warrant two days after the discovery of the contraband in the vehicle.[9] More particularly, the defendant complains that counsel's cross-examination led to a redirect examination which disclosed that during the search of the apartment the police found six glassine baggies with cut corners containing cocaine residue and some documents that, Noone opined, were drug tally sheets. The defendant maintains that this blunder in cross-examination so significantly enhanced the prospects of conviction as to deprive him of an otherwise available substantial ground of defense. See *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). We disagree.

To establish ineffective assistance of counsel a defendant must establish both prongs of the *Saferian* standard: (1) counsel's performance fell measurably below that of reasonably competent counsel; and (2) such deficiency deprived the defendant of an otherwise available substantial ground of defense. *Ibid.* Here, the defendant has established neither.

We begin by observing "that an ineffective assistance of counsel challenge made on the trial record alone is the weakest form of such a challenge because it is bereft of any explanation by trial counsel for his actions and suggestive of strategy contrived by a defendant viewing the case with hindsight." *Commonwealth* v. *Peloquin*, 437 Mass. 204, 210 n.5 (2002). See *Commonwealth* v. *Ortega*, 59 Mass. App. Ct. 217, 221

---

[9]Because of late disclosure that chemical analysis of baggies found during the search of the apartment was positive for cocaine residue, the Commonwealth represented that it had no intention of introducing evidence of the apartment search unless the defendant opened the door. On direct examination, the Commonwealth had examined Noone without mentioning the search warrant for the defendant's apartment or the materials found there.

(2003), *S.C.*, 441 Mass. 170 (2004). Nevertheless, "[a] claim of ineffective assistance may be resolved on direct appeal of the defendant's conviction when the factual basis of the claim appears indisputably on the trial record." *Commonwealth* v. *Adamides*, 37 Mass. App. Ct. 339, 344 (1994).

When arguably reasoned tactical or strategic judgments of counsel are called into question, such judgments must be shown to be manifestly unreasonable when made. See *Commonwealth* v. *Ortega*, 441 Mass. at 175. Contrary to the defendant's contention, his counsel's tactical judgment in cross-examining Noone was neither inexplicable nor manifestly unreasonable. See *Commonwealth* v. *Mahan*, 18 Mass. App. Ct. 738, 746 (1984). Indeed, we discern a reasonable tactical choice that was consistent with the defendant's trial strategy of disassociating himself from the large quantity of drugs found in the trunk even at the risk of appearing to be a drug user.

Faced with the unlikely prospect of convincing the jury that the contraband found in the trunk was for personal consumption, the defendant sought to undermine the proof that the drugs were his. His theory, developed in argument and cross-examination, was that the contraband in the vehicle was not possessed knowingly or constructively by him, but by Hurt, or possibly Davis.[10] Defense counsel posited that because the police had already focused on the defendant, they conducted an inadequate investigation, failing to take fingerprints and to preserve various items of evidentiary significance, including women's clothing found in the trunk.

Consistent with this theory, the cross-examination of Noone sought to take advantage of Hurt's postarrest conduct to further divert the jury's attention away from the defendant and toward Hurt as the owner of the cache of drugs found in the vehicle. In cross-examination of Noone, defense counsel emphasized, as he had in his opening statement, that the police blindly followed Hurt's assertions that the defendant was a large-scale drug dealer and that Hurt could lead the police to the supplier. Counsel elicited that on January 5, the day after the arrest, Hurt, who was then still in custody, requested to meet with Noone.

---

[10]The defendant offered no evidence at trial and did not testify.

Hurt told Noone that he had seen large amounts of cocaine, a nine millimeter handgun, a rifle, safes, drug cooking equipment, and scales at the defendant's apartment.

Believing Hurt's assertions and seeking his cooperation, Noone arranged with the district attorney's office to request a reduction in Hurt's bail, and used the information obtained from Hurt to obtain a search warrant for the apartment the defendant shared with Hall. However, contrary to Hurt's representations, no scales, guns, drugs, drug cooking equipment, safes, or money were found in the search — only six glassine baggies with cut corners containing a residue of cocaine.[11] Nor did Hurt lead the police to the supplier or to an additional twelve kilograms of cocaine belonging to the defendant.

After being released on lower bail, Hurt failed to cooperate with Noone, and, as of the date of trial, was "a fugitive."[12] Moreover, counsel emphasized, the baggies found in the apartment were packaged quite differently from the massive quantity of drugs found in the vehicle.

Defense counsel's attempt to divert the jury's attention from the defendant to Hurt was not manifestly unreasonable given the strong direct evidence and consciousness of guilt evidence that tied the defendant to the heroin, cocaine, and marijuana found in the vehicle. Allowing introduction of the fact that police found a small number of baggies containing cocaine residue, and even some writings described as drug notes, in an apartment the defendant shared with Hall was a reasonable

---

[11]The Commonwealth later elicited from Hall that on January 3, 2000, at the defendant's request, she had rented the vehicle in question so that he could conduct business in New York. Hall indicated that she had seen the defendant with a black or dark blue backpack, but she did not recognize the green backpack seized from the trunk as the defendant's.

On cross-examination and in closing argument, defense counsel brought out that Hall could not identify the backpack containing the drugs as the defendant's and that the defendant had not been in the apartment between January 4 and the January 6 search. Hall also had never seen plastic baggies with cut corners in the apartment and had not removed any items from the apartment between January 4 and January 6.

[12]Subsequent to trial, Hurt was apprehended and pleaded guilty to trafficking heroin in excess of twenty-eight grams and trafficking cocaine in excess of 200 grams.

trade-off for the opportunity to shift the focus to Hurt as the true owner of the drugs in the motor vehicle.

Even were we to conclude, contrary to this record, that undertaking such a cross-examination of Noone was more than a mere tactical error, the defendant has still failed to establish that this deprived him of an otherwise available substantial ground of defense, or that "better work might have accomplished something material for the defense." *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977). The rental of the vehicle at the defendant's request in order to conduct business in New York, the stop and discovery of the contraband, and the defendant's flight across the highway and efforts to evade capture provided powerful evidence as to the defendant's guilt. The "basic trouble from the defense standpoint was weaknesses in the facts rather than any inadequacy of counsel." *Id.* at 111. See *Commonwealth* v. *North*, 52 Mass. App. Ct. 603, 616 (2001).

*Judgments affirmed.*