Frison, SHANNON, J.
The defendants were indicted on charges of Trafficking Heroin of more than 36 grams and less than 100 grams. Their Motions to Suppress Evidence were heard on January 25 and 26, 2016 in Worcester County. This case represents a motor vehicle stop that escalated to an investigatory search without probable cause. The search of the vehicle involved was based almost solely on a hunch, and the searches of the vehicle and occupants were improper and illegal at every stage of the interaction. For the reasons below, the motions are ALLOWED.
FINDINGS OF FACT
The Court finds the following facts based upon the testimony of Massachusetts State Police Troopers Alena Sullivan (“Trooper Sullivan”), Thomas Eliason (“Trooper Eliason”), and James Bazzinotti (“Sergeant Bazzinotti”).
On Tuesday, June 2, 2015, Trooper Sullivan observed a motor vehicle traveling in the middle lane of Route 495 Northbound in Southborough, Massachusetts. She followed that vehicle for approximately two miles and estimated its speed to be, at various points, between eighty-two and eighly-three miles per hour in a sixty-five mile-per-hour speed zone. Trooper Sullivan activated her police cruiser lights and pulled that vehicle over to the shoulder of the highway. She then approached the driver side of the vehicle and noted that there were a total of four people in the vehicle. Trooper Sullivan was the only police personnel on the scene at that time.
The operator of the vehicle, defendant Mr. Marquis Moore (“Moore”), seemed confused and asked why he was stopped. Trooper Sullivan told him he was pulled over for speeding. Moore had and provided a valid driver’s license from the state of New York upon request. He also provided a rental agreement from Hertz rental cars. The back seat passengers in the vehicle were not wearing seat belts. Defendant Ms. Trishana Singh (“Singh”) was the front seat passenger. Defendants Mr. Elijah Russaw (“Russaw”) and Mr. Quinbon Williams (“Williams”) were seated in the back of the vehicle. Each passenger provided valid driver’s licenses from the state of New York. The renter on the Hertz agreement was one Mr. Deran Thomas (“Thomas”), who was not present in the vehicle. The rental agreement also appeared, at that time, to be expired. Moore told the trooper that Thomas was the *230 renter, and that he was a friend who had allowed him to use the vehicle.
Trooper Sullivan requested additional cruisers to assist her. She then notified all of the occupants that the vehicle was going to be towed. At that time, Trooper Sullivan intended to summons Moore for the criminal charge of Use of Motor Vehicle Without Authority. Sergeant Bazzinotti and Troopers Bertozzi, Mather, and Nunes arrived to assist her. Trooper Sullivan called Hertz and learned that the rental agreement with Thomas was extended and was not expired. However, no other names were listed as drivers on the agreement with Hertz.
Trooper Sullivan decided that she would tow the vehicle because none of the occupants were listed on the rental agreement. The troopers ordered all of the defendants out of the vehicle and pat-frisked each one of them. After being searched, all four individuals were placed in the back of four different locked police cruisers. None of the occupants were under airest at that time, but they were not free to leave. Despite that fact, Trooper Sullivan stated on the radio to dispatch that she had “four parties in custody.”
Mr. Moore also told the troopers that there was another rental agreement in the car, which they found in the console. That agreement was consistent with the information obtained by Trooper Sullivan that the rental was extended and currently valid.
Trooper Sullivan then began a search of the vehicle that she considered to be an inventory search in compliance with the State Police Vehicle Inventory policy. Trooper Sullivan searched the interior of the car and found that she could not open the locked glove compartment. The trunk of the vehicle was also locked and closed. Sergeant Bazzinotti directed that the trunk be unlocked and opened. He then searched the trunk and recovered a plaster canister of white powdery substance with a plastic baggie tied off at the top of it that also contained a white powdery substance. Trooper Sullivan (who had been on the force for roughly eight months at that time) and Sergeant Bazzinoti believed one of the substances to be cocaine and one to be a cutting agent commonly used when packaging cocaine for distribution. Although Sergeant Bazzinotti had a field test with him in his cruiser, he did not test any of the substances at the scene. The four occupants of the vehicle were all placed under arrest without the benefit of that testing.
The troopers then prepared to tow the vehicle. The white powdery substance was taken back to the State Police barracks in Millbury. Trooper Bazzinotti and Trooper Nunes “field tested” the substance at the barracks, and the substance apparently tested positive for cocaine. That field test has been discarded by Trooper Sullivan and is no longer available for review. Later, and before the grand jury, an actual laboratory analysis of the substance determined that cocaine was not present in that white powdery substance.
Trooper Sullivan booked all of the defendants at the barracks. She recovered no evidence during the searches attendant to booking. Williams was uncooperative at the barracks. He refused to sign his property inventory form and made derogatory comments about the troopers when he made his telephone call from the barracks.
From the scene, Sergeant Bazzinotti called for assistance from canine troopers to meet him at the barracks. Trooper Eliason arrived with his canine partner “Victor” and searched the vehicle again at the Millbury barracks. Trooper Sullivan was there with Trooper Eliason. Victor was allowed to walk around the vehicle. At the driver’s window, Victor stopped and looked into the window of the vehicle. Victor alerted the troopers to the possible presence of drugs by sitting at or near the glove compartment of the vehicle. Victor also touched the glove box with his paw.
Sergeant Bazzinotti oversaw the booking of Russaw. He directed another trooper to have Russaw empty his pockets into his hat. When Russaw did so, Sergeant Bazzinotti noticed what appeared to be a key that is usually inserted in the key “fob,” but that was missing from the fob to the subject vehicle. There was no testimony on how the key from Russaw’s pocket got from his hat to the glove compartment of the vehicle. However, the troopers, at some point, used that key to unlock and open the glove compartment. They recovered a clear plastic bag containing a brown powdery substance from that compartment and field-tested it. That substance was positive for heroin according to the field test.
Trooper Sullivan asked Ms. Singh where they were driving; she stated that the four were headed to Boston to meet a friend.
RULINGS OF LAW
The stop of the defendants’ car was a permissible traffic stop; the defendants do not argue otherwise. See Commonwealth v. Sinforoso, 434 Mass. 320, 323 (2001) (validating stop for speeding violation). The defendants dispute the permissibility of the troopers’ remaining actions. Specifically, the defendants maintain that (1) there was no lawful basis to arrest Mr. Moore; and (2) the troopers had no basis to impound or search the vehicle. They argue that, for these reasons, the fruits of the search must be suppressed.
I. The Arrest
The Commonwealth’s proffered basis for arresting Mr. Moore is his operation of the rental car without permission from Hertz, conduct the Commonwealth asserts establishes probable cause to bring charges for use of a motor vehicle without authority in violation of G.L.c. 90, §24(2)(a).[2] The defendants disagree that Mr. Moore’s conduct is criminally actionable and maintain that his arrest was unlawful. Our cases have not yet addressed the criminality of driving a rental car without permission from the lessee of the vehicle under §24(2)(a). See Commonwealth v. Watts, 74 Mass.App.Ct. 514, 518 n.4 (2009) (“We need not decide *231 whether the fact that [the rental company] no longer authorized the defendant to operate the rental car provided the police with probable cause to arrest him for use of a motor vehicle without authority in violation of G.L.c. 90, §24(2)(a)”). Contra Commonwealth v. Lopez, 78 Mass.App.Ct. 1123, *8 (2011) (Rule 1:28 opinion) (suggesting, in dicta, officers could have arrested defendant for violation of §24(2) (a) because driver was not authorized under rental agreement).
The elements of use without authority are: (1) use; (2) of a motor vehicle; (3) on a public way; (4) without authority; (5) knowing that such use is unauthorized. Commonwealth v. Moor, 50 Mass.App.Ct. 730, 734 (2001). Authority implies “permission of the owner . . . or the permission of some other person who possessed a legal right of control ordinarily exercised by the ownef' of the vehicle. Commonwealth v. Byone, 49 Mass.App.Ct. 687, 690-91 (2000). This court does not read into §24(2) (a) any intent by the Legislature to criminalize borrowing a rental car from a lawful lessee of that vehicle. In fact, the plainest reading of the elements indicates that a person borrowing a rented car from a lawful lessee is one with permission of some other person who possessed a legal right of control ordinarily exercised by the owner. That language necessarily allows for someone other than the actual owner of a vehicle to also be able to give permission for another person to drive the vehicle, despite any civil contract that the lessor and lessee have executed.
Criminalization of the use of rental cars rented by friends or family members should not be taken lightly or just gradually accepted when it becomes customary for police to make such arrests and seizures on that basis. Certainly, not every breach of a civil contract is a criminal offense. To be certain, Mr. Moore’s use of the vehicle was arguably a breach of Thomas’s contract with Hertz. However, because Mr. Moore had permission from Mr. Thomas (who lawfully rented the vehicle from Hertz) to drive the rental car, the Court believes that Mr. Moore had authority from “an individual who possessed a legal right of control of the vehicle.” Id.[3] This is consistent with the interpretation of unauthorized use statutes in other jurisdictions. See United States v. Smith, 263 F.3d 571, 587 (6th Cir. 2001) (“It was not illegal for [defendant] to possess or drive the [rental] vehicle, it was simply a breach of the contract with the rental company”) (emphasis in original); United States v. Hunter, 2013 WL 50181, *12 (D.Kan. 2013) (“An unauthorized but lawfully licensed driver can legally operate a rental vehicle under Kansas law, in the sense that they are not violating Kansas law when doing so”); State v. Bass, 2013 Okla.Crim.App. LEXIS 9, *5 (2013) (holding that operation of defendant not named as authorized driver of rental car did not support claim for felony of unauthorized use of a vehicle). By contrast, other states’ criminal codes specifically outlaw the operation of a rental car if not listed on the rental agreement. See e.g., Rowe v. State, 363 Md.Ct.App. 424, 429-30 (2001) (defendant violated Maryland Code, §18-106(b) of the Transportation Article, “driving a rental vehicle in violation of the rental agreement, ” a law subsequently repealed in 2014).
The Court therefore concludes that, because Mr. Moore had permission from Mr. Thomas to drive the vehicle, the troopers had no basis to arrest Mr. Moore for use of a motor vehicle without authority. Mr. Thomas conveyed authority he had under the valid rental agreement with Hertz to Moore. Because the purported violation of §24(2) (a) was the only basis for arresting Mr. Moore, the arrest was improper, and violated Mr. Moore’s Fourth Amendment rights.
II. The Search & Seizure
“On a motion to suppress evidence seized during a warrantless search, the Commonwealth bears the burden of establishing that the evidence was legally obtained pursuant to a reasonable search.” Commonwealth v. Dunn, 34 Mass.App.Ct. 702, 703 (1993). “In the case of an inventory search, ‘the propriety of the impoundment of the vehicle is a threshold issue in determining the lawfulness of the inventory search.’ ” Id., quoting Commonwealth v. Garcia, 409 Mass. 675, 678 (1991).
An inventory search is legal only if both the impoundment of the vehicle leading to the search and the conduct and scope of the search meet constitutional strictures. Commonwealth v. Ellerbe, 430 Mass. 769, 772-73 (2000). In the Court’s view, neither the impoundment nor the search in this case met these strictures.
A. Impoundment
The impropriety of the impoundment flows from the impropriety of Mr. Moore’s arrest. See Commonwealth v. Caceres, 413 Mass. 749, 750-53 (1992) (automobile stopped on highway may be impounded when police have arrested driver and no licensed operator is available to move vehicle to secure location). Having concluded that no basis existed to arrest Mr. Moore for violating §24(2)(a), it follows that the subsequent seizure of the rental vehicle was also improper in the absence of any other justification for impounding it. See, e.g., Commonwealth v. Daley, 423 Mass. 747, 750 (1996) (holding that impoundment was proper even though defendant was not under arrest because vehicle was unregistered, uninsured, and had plates belonging to another vehicle). The Commonwealth protests that an inventory search was proper in view of the fact that the vehicle needed to be towed because none of the defendants were authorized by the rental agreement to operate it. But as the Court has made clear, Mr. Moore was authorized to operate the rental car by Mr. Thomas, who had a legal right to control it.
The Commonwealth also cites Commonwealth v. Henley, 63 Mass.App.Ct. 1 (2005), for the proposition that impoundment of a rental car is proper when no driver present is authorized by the rental agreement to operate it. There, the police stopped a speeding and swerving rental car. Police arrested the driver after *232 learning that he had a revoked license and two outstanding default warrants. Two passengers had valid licenses. The Appeals Court held that the impoundment was proper where the late hour prevented securing permission from the authorized driver to allow the licensed drivers to take the vehicle. Here, Mr. Moore was not properly arrested, had permission to drive the car, identified the renter as his friend, and substantiated information the police later learned about the extended lease agreement. The propriety of the arrest in Henley renders that case inapposite to the unlawful arrest and impoundment in the instant case.[4]
Having determined that the impoundment was not proper, the evidenced seized from the subsequent inventory search of the impounded vehicle must be suppressed. See Commonwealth v. Murphy, 63 Mass.App.Ct. 11, 17 (2005) (suppressing firearm found in vehicle after determining impoundment of vehicle was unlawful).
B. Exit Order, Pat-Frisk, and Detention
The Court notes further that, because there was no justification for impounding the rental car, the exit order to all of the defendants was also improper. See Commonwealth v. Ferrara, 376 Mass. 502, 505 (1978) (“Once the defendant had produced a valid license and registration, there was no basis for further interrogation and no need for further protective precautions”); Commonwealth v. McCleey, 345 Mass. 151, 153 (1962) (“[T]he record suggests no purpose of ordering [the defendant] out of the car other than to make an illegal search”). Other permissible grounds for ordering the defendants to exit were similarly not present. No evidence has been presented about any viable threats to any of the troopers’ safely, nor was a search of the car otherwise justified under an alternative exception to the warrant requirement. See Commonwealth v. Croan, 469 Mass. 24, 28 n.6 (2014).
The pat-frisk of the defendants was also improper where none were suspected of a crime, made any furtive or suspicious gestures, and should have been permitted to “continue on their way.” Commonwealth v. Loughlin, 385 Mass. 60, 62-63 (1982) (suppressing evidence traceable to illegal pat-frisk). See also Commonwealth v. Torres, 433 Mass. 669, 675-76 (2001) (holding that analysis of propriety of pat frisk is identical to exit order analysis, i.e., “whether a reasonably prudent man in the policeman’s position would be warranted in the belief that the safely of the police or that of other persons was in danger”).
The same is true with respect to the defendants’ detention inside separate and locked police cruisers. To make an arrest, an officer requires probable cause to believe the individual arrested has committed a crime. See Commonwealth v. Bottari, 395 Mass. 777, 183 (1985). An objective test is used to determine whether an individual is under arrest that asks whether there is (1) an actual or constructive detention or seizure, (2) performed with the intention to effect an arrest, and (3) so understood by the person detained. See Commonwealth v. Powell, 459 Mass. 572, 580 (2011). Neither the defendant’s nor the officer’s subjective understanding controls this determination. Commonwealth v. Avery, 365 Mass. 59 (1974). Even if the troopers were justified in arresting Mr. Moore for use of a motor vehicle without authority (which they were not), they had no basis whatsoever to place the other occupants in separate locked police cruisers. The defendants were constructively seized, the troopers conducted the seizures with the purpose of limiting their freedom to leave, and the defendants understood that they were not free to leave.
The Court heard testimony that the defendants were placed in separate cruisers in order to drive them to a nearby gas station as a “courtesy" because the rental car was being towed. If this was indeed the intention of the troopers, then the defendants could have been transported in one cruiser while the rental car was inventoried. Instead, Trooper Sullivan notified that she had “four parties in custody,” and requested the assistance of numerous other cruisers. These actions constituted an arrest of all of the defendants. These arrests were not supported by probable cause and therefore violated the defendants’ Fourth Amendment and art. 14 rights. See Commonwealth v. Garcia, 34 Mass.App.Ct. 645, 651-52 (1993).
C. The Search
Although the impropriety of the impoundment is dispositive of the defendants’ motion, the Court also considers the scope of the search and concludes that it violated the defendants’ privacy rights.
An inventory search must be conducted for some legitimate purpose other than a search for evidence. Commonwealth v. Benoit, 382 Mass. 210, 219 (1981). “An inventory search conducted as a pretext for a general investigatory search violates the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights.” Commonwealth v. Horton, 63 Mass.App.Ct. 571, 576 (2005), and cases cited. Inventory searches “conducted according to written procedures” subsequent to a lawful impoundment are permissible, id. at 576-77, but the court has emphasized that the police procedures must be in writing. Commonwealth v. Bishop, 402 Mass. 449 (1988). “The purpose for requiring written procedures by which inventory searches are to be conducted is to limit an officer’s discretion to ‘search at will, and so lessen the possibility that police will use inventory procedures as investigative searches.’ ” Commonwealth v. Baptiste, 65 Mass.App.Ct. 511, 515 (2006), quoting Commonwealth v. Garcia, 409 Mass. 675, 681 (1991). The fact that the police suspect the search to turn up evidence of a crime does not make it an impermissible pretext search per se. Id. at 577.
The Court cannot uphold the troopers’ inventory search of the rental car in this case, where the evidence suggests that the execution of the search revealed an investigatory motive. Commonwealth v. Ortiz, 88 Mass.App.Ct. 573, 576 (2015).
*233 The distinction between an inventoiy search and an investigatoiy search is found in the objective of each. The objective of an investigatoiy search is to gather evidence, whereas an inventoiy search is conducted for the purposes of safeguarding the car or its contents, protecting the police against unfounded charges of misappropriation, protecting the public against the possibility that the car might contain weapons or other dangerous instrumentalities that might fall into the hands of vandals, or a combination of such reasons.
Id. While the inventoiy policy in this case lists legitimate reasons[5] for conducting inventoiy searches, the actual execution of the search in this case suggests it was conducted to locate evidence of criminal activity, notably where the strictures of the policy were violated during the search.
1. Trunk Search
The inventoiy policy provides that the interior and exterior of the vehicle shall be inventoried, but that the trunk should only be inventoried if it is unlocked or there is a key available. Sergeant Bazzinotti ordered that the trunk of the car be opened in the field. It is not clear from the evidence how the locked trunk was accessed, but no evidence of the use of a key was presented. The policy prohibits this invasion into the trunk, and violation of the policy is perhaps the clearest evidence of investiga-toiy purpose. See Commonwealth v. Matched, 386 Mass. 492, 509-10 (1982); South Dakota v. Opperman, 428 U.S. 364, 375-76 (1976).
Although the Supreme Judicial Court has held that “a noninvestigative inventoiy search of a vehicle . . . reasonably includes opening a locked trunk,” Garcia, 409 Mass, at 684, the fact that the troopers violated their written policy renders the search of the trunk unreasonable because an inventoiy search must be conducted pursuant to the written procedures. Bishop, 402 Mass, at 451; Commonwealth v. Silva, 61 Mass.App.Ct. 28, 36 (2004).
Even if Mr. Moore was properly arrested and the rental car properly impounded, the troopers’ search of the trunk was not permitted by the inventoiy policy. Evidence seized from the trunk must be suppressed and may not, therefore, serve as the basis of reasonable suspicion that other illegal substances were in the vehicle.
2. Glove Compartment Search
Once the troopers discovered, during their unlawful inventoiy search at the scene of the stop, what they believed to be cocaine, the defendants were placed under arrest. The Commonwealth does not clearly specify whether the subsequent search of the vehicle at the barracks was also an inventoiy search, or whether it was a search conducted under the automobile exception to the prohibition against warrantless searches. See Commonwealth v. Motta, 424 Mass. 117, 122 (1997) (holding no warrant required when police have probable cause to believe motor vehicle on public way contains contraband or evidence of crime). In either case, the subsequent search was improper and the fruits of that search—the heroin found in the glove compartment—must be suppressed. See Bishop, 402 Mass. at 452.
a. Continuation of Inventoiy Search
If the search of the vehicle was an inventoiy search, it suffers from the same defect as the troopers’ search of the locked trunk, i.e., it violated the written procedures for conducting inventoiy searches. As is the case with inventories of trunks, the policy provides that locked glove compartments may only be inventoried if a key is available. Here, the key was only made available by the improper confiscation of Russaw’s fob key during booking. Russaw’s participation in the booking process was only made possible by his improper arrest, in turn set in motion by the improper search of the trunk. Article 14 of the Massachusetts Declaration of Rights requires the exclusion of evidence seized during an inventoiy search not conducted according to written procedures. Id. at 451. Both the white powdery substance taken from the trunk and the heroin in the glove compartment were fruits of the unlawful search of the trunk. The Commonwealth does not argue that the heroin was the fruit of the search of the trunk, but contends that the search was lawful. Because the Court has deemed that the search of both the trunk and the glove compartment were unlawful, the purported heroin must be suppressed. Id. at 452.
The continued inventoiy of the vehicle at the barracks was also an improper pretext for a general investigatoiy search. Victor’s participation in the search clearly indicates the investigatoiy intent of the troopers. See Commonwealth v. Alvarado, 420 Mass. 542, 553 (1995) (“The canine was trained for, and used in this instance for, the detection of controlled substances. Thus, it is clear that the search of the [vehicle] was of an investigatoiy nature and was not an inven-toiy search”). The Commonwealth opines that “a dog sniff of a properly stopped vehicle is not a search under art. 14.” Commonwealth v. Feyenord, 445 Mass. 72, 82-83 (2005). However, Victor was called to assist in drug-detection at the barracks, not at the scene of the stop. The police officer in Feyenord stopped a vehicle and extended the defendant’s detention and expanded the scope of his investigation by summoning a drug-sniffing dog. The Court validated this prolonging of detention because the defendant’s detention was not overly prolonged or onerous in duration and the officer had numerous reasons to suspect the stopped vehicle was transporting drugs. Here, the troopers had no reason to suspect criminal activily that would have justified a search of the car or the summoning of a drug-sniffing dog for an inventoiy search. The use of Victor during an inventoiy search indicates the search’s true investiga-toiy purpose. See Alvarado, 420 Mass. at 553.
b. Initiation of Automobile Exception Search
The Commonwealth also appears to argue that the search of the glove compartment was proper under the automobile exception to the general Fourth Amendment prohibition of warrantless searches. This exception pro *234 vides that a search warrant is not required to enter an automobile “when police have probable cause to believe a motor vehicle on a public way contains contraband or evidence of a crime . . .” Motto, 424 Mass. at 122, quoting Commonwealth v. Cast, 407 Mass. 891, 901 (1990).
Searching the trunk or glove compartment of a vehicle is permitted so long as authorities have probable cause to believe contraband may be found there. United States v. Ross, 456 U.S. 798, 821 (1982); Commonwealth v. Jiminez, 22 Mass.App.Ct. 286, 290 (1986). The Commonwealth avers that Trooper Elia-son and Victor were called only when the other troopers discovered what they believed to be cocaine in the trunk of the rental car. It asserts that Trooper Sullivan summoned the pair to confirm or dispel the presence of any additional illegal substances.
Typically, removing a vehicle to the police station to perform an automobile exception search is permissible where risks such as exposure to traffic require such action. Motto, 424 at 124. Critically, however, police must have probable cause to believe the vehicle contains contraband before they search it. Motta, 424 Mass. at 122. Here, the troopers conducted a search of the locked glove compartment based on probable cause they attained halfway through an improper inventory search. Even if the inventory search was validly initiated, the troopers improperly exceeded the scope of the inventory search when they opened the locked trunk.
III. Conclusion
The heroin inside the glove compartment was a direct product of the unlawful automobile exception/inventoxy search at the barracks. It was also the indirect product of the initial unlawful inventory search at the scene of the stop and the unlawful arrest of Mr. Moore following the stop. Both direct and indirect products of a police officer’s unlawful conduct may be suppressed as fruit of the poisonous tree. See Wong Sun v. United States, 371 U.S. 471, 484 (1963); Commonwealth v. Fredette, 396 Mass. 455, 458-59 (1985). The suspected heroin was obtained by exploitation of the illegality of the troopers’ conduct, not by any other means that would sufficiently “dissipate the taint” of their conduct in this case. Id, Suppression of both the powdery substance and the heroin found during the search of the rental car is therefore appropriate.
There was no valid purpose for conducting the arrests or search in this case, and ample evidence presented to the court suggests that the true purpose of all of the troopers’ conduct in this case was to conduct an investigation of the defendants. Trooper Bazzinotti testified that if his suspicions about criminal activity were unfounded, he would have “unarrested” them. This, to the Court, reveals the investigatory purpose of the troopers and the nature of the defendants’ detention. Because “unarresting” an individual does not and cannot remedy a series of violations of Fourth Amendment rights, the Court will suppress the fruits of those violations. To allow the conduct described in this case in these circumstances would “invite random, unequal treatment of motorists” for no reason or improper reasons known only to the police. Commonwealth v. Santos, 65 Mass.App.Ct. 122, 128 (2005).
ORDER
For the foregoing reasons, the defendants’ motions to suppress are ALLOWED.

 he statute reads, in relevant part: “whoever uses a motor vehicle without authority knowing that such use is unauthorized shall, for the first offense be punished by a fine of not less than fifty dollars nor more than five hundred dollars or by imprisonment for not less than thirty days nor more than two years, or both . . .”

 Citing Commonwealth v. Depina, 83 Mass.App.Ct. 1110 (2013) (1:28), the Commonwealth avers that the absence of Mr. Moore’s name on the rental agreement establishes probable cause to arrest him for use without authority. In Depina, the Appeals Court reversed a district judge’s dismissal of an indictment for use without authority. The district judge had dismissed the Commonwealth’s case because the only basis for prosecution under §24(2)(a) was the absence of the defendant’s name on the rental agreement of the rental vehicle he was driving. In reversing the judge’s decision, the appellate panel held that sufficient evidence was presented to demonstrate that the defendant knew he did not have the authority to drive the vehicle. The panel did not address the undersigned judge’s determination that driving a rental vehicle with permission from the lessee, alone, could not sustain an indictment brought under §24(2)(a). Because Depina does not squarely address the criminality of driving a rental car with the permission of the person who rented it, the Court finds that case inapposite and not dispositive of the facts of this case.

 Henley placed some importance orl the language of the rental agreement in determining that the impoundment was proper in that case. This language read: “No additional operators are authorized or permitted without [the lessee’s] prior written approval in accordance with the terms and conditions of the rental agreement or applicable state law.” Impoundment was proper, the Appeals Court said, because getting the lessor’s or lessee’s verbal permission for the properly licensed passengers to drive would still violate the rental agreement’s written permission requirement. Henley, 63 Mass.App.Ct. at 5-6 &n.l.
Critically, Henley does not address whether the driver’s operation of the vehicle violated G.L.c. 90, §24(2)(a). It did not need to reach this question because the driver in that case was arrested for other appropriate reasons. Here, where the Court believes that Mr. Moore’s conduct does not sustain a charge for use of a motor vehicle without authority, the arrest was improper because Mr. Moore was available to drive the car away from the scene of the initial stop. Hence, even if Henley may be read to authorize impoundment where a rental car driver is arrested and the other passengers do not have clear permission from the rental car’s lessee to drive it away from the scene, it cannot be read as authority on the criminality of borrowing a rental car from a lessee under §24(2)(a).

 he policy provides that “(a]ny vehicle ordered towed, or in the custody of the Department, shall be inventoried and properly documented in order to protect: [t]he vehicle and its contents; [t]he Department and tow company against false claims of lost, stolen, or vandalized property; and [t]he members and the public from dangerous items that might be in the vehicle.