The Commonwealth's complaint charged the defendant, Rashon Nicholas, with possession with intent to distribute marijuana (subsequent offense), operating with a suspended license (subsequent offense), threats to commit a crime, and with a civil infraction of improper use of a mobile telephone by an operator. The defendant filed a motion to suppress, arguing that the officers' decision to seize and impound the vehicle he was operating was unlawful and, therefore, the incriminating items found in the vehicle pursuant to an inventory search must be suppressed. After a hearing, a judge allowed the motion. A single justice of the Supreme Judicial Court granted the Commonwealth's application for leave to pursue an interlocutory appeal of that ruling, and directed the appeal to this court. We reverse.
Background. The motion judge made the following findings of fact, which we accept absent clear error. See Commonwealth v. Scott, 440 Mass. 642, 646 (2004). On January 8, 2017, at about 1:14 A.M. , Boston police Officer Joshua De LaRosa was on patrol in the Jamaica Plain section of Boston with his partner when he observed a motor vehicle approach and stop at the intersection of Walnut Avenue and Westminster Avenue. The night was stormy and snowy. The driver, later identified as the defendant, twice waved the police vehicle through the intersection with his hand as he held an illuminated cellular telephone. De LaRosa declined to proceed as the defendant directed, and instead, followed behind the defendant's vehicle. De LaRosa noticed one of the vehicle's two license plate lights was out and the other light was dim. He signaled the vehicle to stop and the defendant complied, stopping in the travel lane of the street.
When the officers approached the vehicle, the defendant rolled down the back-seat passenger window on the driver's side. From the outset, the defendant interacted with the officers with hostility and belligerence. He acceded to the police request for his license and registration, and a query revealed that his license had been suspended and that the vehicle was registered to a Maria Perez. The officers brought the defendant to the rear of his vehicle and placed him under arrest.
Police determined that the passenger, Ka-sha Cooper, held a valid driver's license. Police asked her if she knew the registered owner of the vehicle and Cooper responded that it was the defendant's mother; she did not know her name. From his data terminal check, De LaRosa already knew that Maria Perez was not the defendant's mother. Although Cooper offered to drive the vehicle home, the officers did not permit her to do so, in part because she could not identify the registered owner.
The police requested a tow truck for the vehicle and did not inquire of the defendant about an alternative to the tow, nor did the defendant suggest an alternative on his own. The police permitted Cooper to leave the scene. Pursuant to a written policy, the officers conducted a vehicle inventory search and discovered three medical marijuana bags containing marijuana on the front seat and a digital scale in the glove compartment.[2] At booking, officers discovered on the defendant's person two more bags of marijuana and $1,271 in cash. The defendant held no documentation for medical marijuana.
The motion judge ruled that "[i]t may well have been reasonable for the police to refuse to allow Ms. Cooper to drive off with the car based upon her request only, inasmuch as she could not identify the owner by name and did not appear connected by the facts reasonably knowable by police to the owner, whether by similarity of name or address or otherwise. But where the driver, a person with apparent authority to have custody of the car, is still on scene, as here, it was not reasonable for the police, faced with a passenger who provided a valid license and asked to take the car and so avoid impoundment, to refrain from asking the defendant one question." While recognizing the defendant's belligerent behavior toward the police, the judge nonetheless concluded that because he was not violent, the police should have "asked him if he wished Ms. Cooper to take the car" before impounding the vehicle. The judge concluded that, because authorized drivers routinely permit others, such as restaurant valets or car wash attendants to drive their vehicles, the defendant could have authorized Cooper "to take the car from the scene and the failure of police to ask him in the face of Cooper's request" was unreasonable. He therefore allowed the motion to suppress.
The Commonwealth moved for reconsideration and the motion judge, relying on Commonwealth v. Campbell, 475 Mass. 611, 619 (2016), rejected the argument that the defendant, as an authorized driver, did not have implicit authority to allow others to drive the vehicle.
Discussion. On appeal, the Commonwealth argues that the motion to suppress should not have been allowed because the impoundment of the vehicle was in all respects reasonable. In assessing the validity of an officer's decision to impound a vehicle, "the question is whether impoundment 'was reasonably necessary based on the totality of the evidence.' " Commonwealth v. Crowley-Chester, 476 Mass. 1030, 1031 (2017), quoting from Commonwealth v. Oliveira, 474 Mass. 10, 13 (2016). The Commonwealth bears the burden of proving the constitutionality of the seizure -- the vehicle's impoundment. See Commonwealth v. Ehiabhi, 478 Mass. 154, 164-165 (2017). "In reviewing the judge's decision on this point, 'we accept [his] subsidiary findings of fact absent clear error but conduct an independent review of his ultimate findings and conclusions of law.' " Crowley-Chester, supra, quoting from Commonwealth v. Eddington, 459 Mass. 102, 108 (2011).
Here, there is no dispute that following the defendant's arrest for operating with a suspended license, the police had a legitimate purpose for requiring the vehicle's removal. When directed by the police to pull over, the defendant stopped in the travel lane of the roadway, rather than a lawful parking spot. It was snowing and the vehicle's location would likely impede snow removal, and the area was one known for car break-ins. See Oliveira, supra at 13-14. Therefore, consideration turns to "whether the owner of the vehicle or a person clearly authorized by the owner to drive the vehicle was present and lawfully able to drive the vehicle away, that is, whether the vehicle was properly registered and the person was licensed to drive and neither under arrest nor under the influence of drugs or alcohol" (emphasis supplied). Id. at 14-15. Upon the defendant's arrest, neither the owner nor anyone "clearly authorized by the owner" was present to drive the vehicle away. There was no evidence that the owner, Maria Perez, authorized Cooper to drive the vehicle, nor could any such inference be drawn absent some evidence Cooper even knew Perez. Thus, where, as here, "the owner or authorized driver, for whatever reason, [is] unable to drive the vehicle away, we consider whether the owner or authorized driver offered the police a lawful and practical alternative to impoundment of the vehicle." Id. at 15.
While it may be fair to assume on this record that the defendant was an authorized driver, he did not offer the police "a lawful and practical alternative to impoundment of the vehicle." Ibid. We agree with the Commonwealth that there is no requirement in the decisional law that the police inquire of the defendant regarding such alternatives, rather decisional law suggests that placing such burdens on police is disfavored. See ibid. See also Commonwealth v. Ellerbe, 430 Mass. 769, 776 (2000) (police need not wait with vehicle until licensed driver can be located); Oliveira, supra at 15 ("police have no obligation to locate or telephone the registered owner to determine his or her wishes").
Because our appellate decisions also make clear that the overriding concern in cases such as this is the "guiding touchstone of 'reasonableness,' " we look to determine whether on the facts of this case it would have been reasonable for police to have posed the question the motion judge suggests. See, e.g., Eddington, supra at 108, quoting from Ellerbe, supra. We begin with the judge's conclusion that even though the defendant was belligerent throughout his contact with police, it was not an impediment to police posing the question. We disagree with this conclusion. The defendant's conduct impaired the police officers' ability to seek the defendant's cooperation in eliciting an alternative to towing, particularly where De LaRosa specifically testified that the defendant's behavior prevented them from getting to an inquiry regarding whether another driver was available.
Moreover, the defendant was, at most, merely an authorized driver; he was not the registered owner, and it is far from clear on this record that the owner imbued him with the authority to permit another to operate the vehicle, particularly where the defendant's operation of the vehicle was unlawful due to his suspended license. Unlike the situation where a valet or car wash attendant takes the vehicle for a brief instant for the benefit of the lawful operator, allowing Cooper to drive the vehicle away from the scene presented a risk that the police might face the owner's accusation of misappropriation of the vehicle.[3] This risk was not speculative. The record supports the inference that the registered owner was either the defendant's wife or girl friend, who was unlikely to authorize Cooper to take her car, given Cooper's testimony that, at that late hour, she was accompanying the defendant to a party.
In any event, more troubling to the judge's conclusion (that suppression was required because the police failed to ask the defendant if he would permit Cooper to remove the vehicle) is the dearth of evidence that the defendant would have answered that question in the affirmative. Not only is there no evidence he would have agreed, the record provides some support for the inference that he would not. Whether or not the defendant heard Cooper's offer to drive the vehicle, the defendant necessarily understood that the police did not intend to place Cooper under arrest, and that the tow of the vehicle was imminent. His silence in these circumstances is some indication that he could offer no lawful and practical alternative. In addition, even though Cooper testified, she offered no evidence that, if asked, the defendant would have permitted her to drive the vehicle.[4] Without some proof that the defendant would have allowed Cooper to remove the vehicle, the conclusion that the failure to ask the question rendered the police decision to impound the vehicle unreasonable is speculative.
Conclusion. We reverse the order allowing the defendant's motion to suppress.
So ordered.
Reversed.

The judge found that the police saw the medical marijuana bags after entering the vehicle to conduct the inventory search.

To the extent that the judge relied on Commonwealth v. Campbell, 475 Mass. at 618-619, to define who may be authorized to operate a motor vehicle, the conclusions in Campbell are constrained by its facts involving a lawful operator not named in a rental agreement being charged with the criminal offense of unauthorized use. Here, the issue is whether the police may permit another driver, who was not operating the vehicle and was without actual or apparent authority to do so, to operate and remove it -- a concern distinct from those at issue in Campbell, namely, whether the police action will create liability or the risk of unfounded claims.

The defendant's affidavit filed in support of his motion to suppress similarly lacks any statement of permission despite the requirement that it must give in detail "all facts relied upon in support of the motion," Mass.R.Crim.P. 13(a)(2), as amended, 423 Mass. 1405 (1996), although the affidavit of course cannot serve as evidence and "is not a substitute for the defendant's testimony at the hearing." Commonwealth v. Mubdi, 456 Mass. 385, 389 n.4 (2010).