NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-927                                          Appeals Court


COMMONWEALTH  vs.  JUAN ELADIO ORTIZ.


No. 14-P-927.

Suffolk.      June 1, 2015. - October 26, 2015.

Present:  Sullivan, Maldonado, & Massing, JJ.


Controlled Substances.  Practice, Criminal, Motion to suppress.
     Search and Seizure, Motor vehicle, Inventory, Container.
     Constitutional Law, Search and seizure.



     Indictments found and returned in the Superior Court
Department on March 27, 2013.

     A pretrial motion to suppress evidence was heard by Kenneth
W. Salinger, J., and a motion for reconsideration was considered
by him.

     An application for leave to prosecute an interlocutory
appeal was allowed by Margot Botsford, J., in the Supreme
Judicial Court for the county of Suffolk, and the appeal was
reported by her to the Appeals Court.


     David D. McGowan, Assistant District Attorney, for the
Commonwealth.
     Eduardo Antonio Masferrer for the defendant.


     MALDONADO, J.  The Commonwealth brings this interlocutory

appeal challenging the suppression, after an evidentiary

hearing, of cocaine and of any postarrest statements. The Commonwealth contends that because a State trooper lawfully stopped and arrested the defendant for failing to signal before switching lanes and for driving with a suspended Massachusetts license, the trooper's postarrest warrantless inventory search of the contents of the defendant's vehicle, specifically a backpack that was in the vehicle, was proper and, therefore, it was error for the judge to allow the motion to suppress. The motion judge concluded that the trooper undertook the inventory search, after stopping and arresting the defendant, as a pretext to conduct a search for investigative purposes. We affirm the judge's well-reasoned order of suppression.

Facts. We summarize the judge's findings. See Commonwealth v. Isaiah I., 448 Mass. 334, 337 (2007); Commonwealth v. Jones-Pannell, 472 Mass. 429, 431 (2015). The defendant, Juan Eladio Ortiz, became the subject of surveillance in a Drug Enforcement Agency task force (DEA) investigation into cocaine trafficking. In the course of their investigation, the DEA agents discovered that the defendant's Massachusetts driver's license and right to operate a motor vehicle in Massachusetts had been suspended, rendering the defendant subject to arrest at any point when he drove a motor vehicle in Massachusetts.

The agents waited until the morning of February 28, 2013, when -- according to an undisclosed source -- the defendant would be transporting a kilogram of cocaine, to set in motion a plan for the defendant's arrest. In anticipation of the defendant driving a motor vehicle through the town of Norwood and eventually into Boston, they contacted Massachusetts State police Trooper Dennis Lynch, and with the expectation that impoundment and an inventory search of the defendant's motor vehicle would follow, they asked Trooper Lynch to arrange for a trooper to be positioned between Norwood and Boston to be available to make a lawful stop of the defendant on any observed motor vehicle infraction and an arrest for driving in Massachusetts on a suspended license. Trooper Lynch assigned the task to Trooper Matthew Hannigan, the handler of a canine-unit dog trained in the detection of narcotics.

At some later point that day, when the DEA agents observed the defendant leave a residence in Norwood carrying a black backpack over his right shoulder and drive off in a minivan,[1] they followed the defendant's vehicle and contacted Trooper Lynch to have the defendant stopped and arrested. Lynch radioed Trooper Hannigan and instructed him to effectuate the

---

[1] The van had a Florida license plate.

defendant's stop and arrest and the inventory search of the vehicle that would follow.

The DEA task force alerted the State police of the defendant's whereabouts, and Trooper Hannigan found and followed the defendant onto the Veteran of Foreign Wars (VFW) Parkway. The trooper had his narcotics-sniffing dog with him. When the defendant changed lanes on VFW Parkway without signaling, Hannigan pulled the defendant over and, after obtaining the defendant's driving documentation,[2] placed the defendant under arrest. The judge found that but for these explicit instructions, Hannigan "would not have stopped [the defendant] for changing lanes . . ." and "that in other circumstances he would not arrest someone for operating a motor vehicle with a suspended license."[3]

Following the stop and arrest, Hannigan radioed for assistance, and when the second cruiser arrived, Hannigan impounded the vehicle and conducted a warrantless inventory

---

[2] The defendant had a valid Florida driver's license.

[3] The judge's findings were supported by the testimony at the motion hearing. For example, Hannigan was asked during cross-examination whether "in the case where you weren't told that there was a kilo of drugs in the car, could you envision yourself maybe not arresting somebody who's moved out of state, has an out-of-state license, has an out-of-state car because they say they weren't aware that their right to drive had been suspended in Massachusetts?" He responded, "Yes, I could see myself summonsing him."

search of its contents pursuant to a State police inventory policy.[4]

Hannigan located the black backpack on the back seat of the minivan.  He opened it and discovered a package of what he believed to be cocaine.  Hannigan returned the package to the interior of the minivan and brought the drug-sniffing canine to it; the dog alerted to the presence of cocaine.

Discussion.  "In reviewing a decision on a motion to suppress, 'we accept the judge's subsidiary findings of fact absent clear error "but conduct an independent review of [the judge's] ultimate findings and conclusions of law."'" Commonwealth v. Jessup, 471 Mass. 121, 129 (2015), quoting from Commonwealth v. Scott, 440 Mass. 642, 646 (2004).  The Commonwealth contends that because the defendant was lawfully stopped[5] and arrested on motor vehicle infractions, the trooper's application of an inventory search policy to impound and search the vehicle was not a pretext and, therefore, his search of the

---

[4] There is no dispute as to the validity of the inventory policy.

[5] See G. L. c. 90, § 14B (failure to signal a change of lanes a civil infraction); Commonwealth v. Williams, 46 Mass. App. Ct. 181, 182 (1999).  As the motion judge noted, the constitutional reasonableness of traffic stops "does not depend on the actual motivations of the individual officer involved." Whren v. United States, 517 U.S. 806, 813 (1996).  Commonwealth v. Avellar, 70 Mass. App. Ct. 608, 610 & n.4, 613 (2007).

contents of the vehicle did not warrant suppression.  We disagree.

Even if otherwise valid, an inventory search must be "conducted for some legitimate police purpose other than a search for evidence."  Commonwealth v. Benoit, 382 Mass. 210, 219 (1981).  See Commonwealth v. White, 469 Mass. 96, 102 (2014) ("The investigative use of these pills transformed a lawful inventory seizure of the pills into an unlawful investigatory search of the pills"); Commonwealth v. Woodman, 11 Mass. App. Ct. 965, 966 (1981).

"The distinction between an inventory search and an investigatory search is found in the objective of each.  The objective of an investigatory search is to gather evidence, whereas an inventory search is conducted for the purposes of 'safeguarding the car or its contents, protecting the police against unfounded charges of misappropriation, protecting the public against the possibility that the car might contain weapons or other dangerous instrumentalities that might fall into the hands of vandals, or a combination of such reasons.'" Commonwealth v. Baptiste, 65 Mass. App. Ct. 511, 516 (2006), quoting from Commonwealth v. Muckle, 61 Mass. App. Ct. 678, 682-683 (2004).  "[T]he fact that the searching officer may have harbored a suspicion that evidence of criminal activity might be uncovered as a result of the search should not vitiate his

obligation to conduct the inventory." Commonwealth v. Tisserand, 5 Mass. App. Ct. 383, 386-387 (1977).  However, "an inventory search [will] not be upheld if . . . there [is] a 'suggestion . . . that this standard procedure' [is] a pretext concealing an investigatory police motive . . . ." Ibid., quoting from South Dakota v. Opperman, 428 U.S. 364, 376 (1976).

Here, DEA agents suspected the defendant of transporting cocaine and prearranged for the defendant's arrest on minor motor vehicle infractions.  Trooper Hannigan was directed to make a valid motor vehicle stop and then arrest the defendant for the sole purpose of impounding and searching the defendant's vehicle and its contents pursuant to State police inventory policy.  The motion judge credited Trooper Hannigan's testimony that he would not have stopped the defendant simply for failing to signal, nor would he have exercised his discretion to arrest the defendant had it not been for the directive that he make an arrest so as to employ the inventory policy to search the backpack for drugs.[6]  See G. L. c. 90, § 21, as appearing in St. 1985, c. 794, § 1, providing that an officer "may arrest" a

---

[6] The judge found, "Hannigan pulled over Ortiz because he intended, as directed, to arrest Ortiz for driving without a license, impound the minivan, and then search the vehicle for the kilo of cocaine that Hannigan had been told could be found inside in a black backpack."

person who operates a motor vehicle after his license has been suspended.[7]

The conduct of the police is assessed by an objective standard. When viewed objectively, the search here was an investigative search and not an inventory search. Accordingly, we see no error in the judge's finding that the inventory search here was simply a pretext for using the inventory policy to conduct an investigatory search of the backpack for evidence of drug activity without a warrant. Viewed in this context the warrantless search of the backpack was unconstitutional.[8] Compare Commonwealth v. Benoit, 382 Mass. at 219 ("The record clearly reveals that the only purpose for the [search of the suitcase] . . . was to seize evidence").

---

[7] We need not decide today whether a driver whose Massachusetts license has been suspended is prohibited from driving in Massachusetts if validly licensed elsewhere. See G. L. c. 90, § 10, second par., first sentence, as appearing in St. 1966, c. 144, § 4 (allowing one with a previously suspended or revoked license to operate motor vehicles if "a new license . . . has . . . been issued to him"). Compare Commonwealth v. Murphy, 68 Mass. App. Ct. 152, 153-154 (2007) (proper to dismiss an indictment under G. L. c. 90, § 23, when the defendant driver had been issued a hardship license, which qualified as a new license under that statute).

[8] The exceptions to the requirement for a warrant to search (such as the automobile exception) are interpreted narrowly, as they raise the risk of subverting the constitutional requirement for a warrant and the danger posed by general warrants. See Commonwealth v. Moynihan, 376 Mass. 468, 472-474 (1978), citing Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971).

This finding by the judge is further supported by the fact that Trooper Lynch specifically assigned the task of stopping and arresting the defendant to Trooper Hannigan, who stopped the defendant with his narcotics-sniffing dog in tow.  See Commonwealth v. Alvarado, 420 Mass. 542, 553 (1995) ("The Commonwealth's contention that the search of the [vehicle] was an inventory search is also defeated by the fact that the police enlisted the assistance of a canine in conducting the search. The canine was trained for, and used in this instance for, the detection of controlled substances.  Thus, it is clear that the search of the [vehicle] was of an investigatory nature and was not an inventory search").[9]

---

[9] The Commonwealth makes two additional arguments, which we conclude lack merit.  First, the Commonwealth assented to the motion hearing proceeding and, therefore, is foreclosed at this juncture from raising challenges to the particularity of the defendant's affidavit under Mass.R.Crim.P. 13, as appearing in 442 Mass. 1516 (2004).  See Commonwealth v. Mubdi, 456 Mass. 385, 390-391 & n.6 (2010).  We also reject the Commonwealth's assertion that the defendant lacked a reasonable expectation of privacy in both the vehicle and the backpack.  Relying on police testimony that the defendant carried the backpack on his shoulder into the car, we conclude the judge properly found the defendant possessed a reasonable expectation of privacy in the backpack.  The defendant has not cross-appealed; therefore, there is no challenge to the portion of the judge's order that denies the suppression of any items other than those discovered in the backpack.  Accordingly, we need not decide whether the defendant lacked a reasonable expectation of privacy in the rental vehicle.  See and compare, e.g., United States v. Buchner, 7 F.3d 1149, 1154 (5th Cir. 1993), cert denied, 510 U.S. 1207 (1994) (reasonable expectation of privacy in bag left in another person's car); United States v. Edwards, 632 F.3d 633, 641-642 (10th Cir. 2001) (defendant had standing to

Accordingly, we conclude that the judge did not err in ordering suppression under the circumstances presented here.

> <u>Order allowing in part motion to suppress evidence affirmed</u>.
>
> <u>Order denying motion for reconsideration affirmed</u>.

---

challenge search of closed personal luggage in trunk of car even though he had no authorization to drive car).