NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11972
SJC-11973

COMMONWEALTH  vs.  JEMAUL R. OLIVEIRA
(and a companion case[1]).

Bristol.     January 8, 2016. - March 28, 2016.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.

Constitutional Law, Search and seizure.  Search and Seizure,
Motor vehicle, Inventory, Impoundment of vehicle.

Complaints received and sworn to in the New Bedford
Division of the District Court Department on March 19, 2013.

Pretrial motions to suppress evidence were heard by Kathryn
E. Hand, J.

An application for leave to prosecute an interlocutory
appeal was allowed by Duffly, J., in the Supreme Judicial Court
for the county of Suffolk, and the appeal was reported by her to
the Appeals Court.  The Supreme Judicial Court on its own
initiative transferred the case from the Appeals Court.

Yul-mi Cho, Assistant District Attorney, for the
Commonwealth.
Patrick Levin, Committee for Public Counsel Services, for
Jemaul R. Oliveira.
Christopher DeMayo for Mitchell T. Violet.

---

[1] Commonwealth vs. Mitchell T. Violet.

GANTS, C.J.  The interlocutory appeal in these companion cases requires us to examine whether it was reasonable for the police to impound a vehicle lawfully parked in a department store lot and conduct an inventory search of the vehicle after the authorized driver of the vehicle was arrested for shoplifting.  We conclude that where the driver had offered the police an alternative to impoundment that was lawful and practical under the circumstances, it was unreasonable and thus unconstitutional to impound the vehicle and conduct an inventory search.  We therefore affirm the motion judge's allowance of the defendants' motions to suppress the fruits of the inventory search.

Background.  The defendants, Mitchell T. Violet and Jemaul R. Oliveira, were charged with shoplifting by concealing merchandise, in violation of G. L. c. 266, § 30A, and unlawfully carrying a firearm, in violation of G. L. c. 269, § 10 (a).[2]  Both moved to suppress the firearm located during the inventory search of the vehicle that they used to travel to the department store.  We summarize the facts found by the motion judge following the evidentiary hearing, supplemented where necessary with undisputed testimony that was implicitly credited by the

_____

[2] Jemaul Oliveira was also charged with unlawfully possessing ammunition, in violation of G. L. c. 269, § 10 (h).

judge.  Commonwealth v. Jones-Pannell, 472 Mass. 429, 431 (2015), citing Commonwealth v. Isaiah I., 448 Mass. 334, 337 (2007), S.C., 450 Mass. 818 (2008).

At about 4:30 P.M. on March 18, 2013, Dartmouth police Officers Robert St. Denis and Victor Morency separately went to the loss prevention office of a department store in Dartmouth, where they learned that loss prevention officers had detained the defendants after determining that they had attempted to leave the store without paying for some items.  Violet had stolen cologne worth sixty-one dollars, and Oliveira had stolen athletic apparel worth forty-three dollars.  St. Denis told the defendants that the police had been called in response to a shoplifting complaint, and asked Violet and Oliveira how they had arrived at the store.  Violet replied that he had driven "his" motor vehicle, but that it was registered to his girl friend.  After learning that a bag of merchandise from the store was in Violet's vehicle, Morency asked Violet for permission to search it for the bag.  Violet gave permission to search for the bag, and he provided the police with the keys to open the vehicle in order to retrieve the bag.  The police officers verified that the vehicle was registered to Violet's girl friend and located it properly parked in a marked spot in the parking lot.  One of the officers used Violet's key to open the vehicle, saw the bag in plain view on the back seat, and brought the bag

back into the store, where one of the defendants produced a receipt for the merchandise in the bag.

The defendants were placed under arrest for shoplifting.[3] The police told the defendants that Violet's vehicle would be inventoried and towed. The defendants became "visibly agitated," and Violet stated that he wanted his girl friend, the registered owner of the vehicle, to come and pick it up rather than to have it towed. The police did not honor Violet's request, and conducted an inventory search of the vehicle. In the unlocked glove compartment, the police discovered a loaded firearm.[4]

The police officers spoke with the store's manager and told him that Violet's vehicle might remain in the parking lot overnight. The manager responded that he did not want it to remain in the lot and asked that it be towed.[5] The motion judge

---

[3] The record is not clear, but it appears that the arrest was for the stolen cologne and athletic apparel.

[4] During the inventory search, or shortly thereafter, a third police officer inside the store conducted a patfrisk of the defendants and discovered that Oliveira had a bullet in his possession. The police officers who conducted the inventory search did not learn of the discovery of this bullet until after the firearm had been found in the inventory search.

[5] The motion judge did not make a finding as to when the store manager asked that the vehicle be towed, but the only inference supported by the evidence is that it occurred after the firearm had been discovered during the inventory search. Officer Robert St. Denis testified that he was present when the store manager asked that the vehicle be towed from the property

found that the "prediction" by the police that the vehicle might remain in the lot overnight was "completely speculative, as no one made an effort to find out whether the owner of the car would come get it, and if so, when."

The judge allowed the defendants' motions to suppress the firearm found during the inventory search. The judge found that the search was a "'true' inventory search," that is, it was intended to secure the vehicle and its contents, and was not a pretext for an investigatory search, and also found that the search conformed to the Dartmouth police department's inventory search policy. But the judge concluded that the seizure of the vehicle that preceded the inventory search was not reasonable. The judge found that Violet's request that the vehicle not be towed and that its owner be permitted to get it was reasonable. The judge also found that there was nothing about the defendants' behavior or about the items found in the shopping bag during the consent search of the vehicle "that would have

_____

and that this request occurred after another officer had told the store manager that the two defendants were going to be arrested for shoplifting and for possession of the ammunition. Because Officer St. Denis also testified that he did not know that a bullet had been found in the possession of one of the defendants until after he had found the firearm during the inventory search, his testimony supports a finding that this conversation occurred after the firearm had been found. The store manager testified that he asked that the vehicle be towed from the parking lot after the police officer informed him that a gun had been found in the vehicle, stating, "I do not want a gun in the car in my parking lot that's going to be left overnight.

given rise to a suspicion that allowing the car to remain in the [department store's] lot until the owner could retrieve it would pose any risk of harm to the public."

The Commonwealth filed a notice of appeal in each case, and it applied for leave to proceed with an interlocutory appeal from the decision in the two cases, which a single justice of this court allowed and reported to the Appeals Court. We transferred the cases to this court on our own motion.

Discussion. Because an inventory search is conducted without a warrant, the Commonwealth bears the burden of proving that the search was lawful. See Commonwealth v. Eddington, 459 Mass. 102, 108 (2011). Under both the United States and Massachusetts Constitutions, an inventory search is lawful only if, first, the seizure (or impoundment) of the vehicle was reasonable, see id., citing Commonwealth v. Ellerbe, 430 Mass. 769, 776 (2000) ("guiding touchstone" is reasonableness); and, second, the search of the vehicle that follows its seizure was conducted in accord with standard police written procedures, see id. at 108 & n.11; Ellerbe, supra at 773 n.8. See generally Commonwealth v. Brinson, 440 Mass. 609, 612 (2003) ("A lawful inventory search is contingent on the propriety of the impoundment of the car"). We address in this case only the reasonableness of the seizure.

In evaluating whether the seizure of a vehicle was reasonable, we look first to the law enforcement officer's true purpose for seizing it.  After the arrest of the driver, a vehicle may be seized for one of at least four legitimate purposes:  to protect the vehicle and its contents from theft or vandalism, see Ellerbe, 430 Mass. at 775; to protect the public from dangerous items that might be in the vehicle, see United States v. Coccia, 446 F.3d 233, 240 (1st Cir. 2006), cert. denied, 549 U.S. 1149 (2007); to protect public safety where the vehicle, as parked, creates a dangerous condition, see Brinson, 440 Mass. at 615-616; Commonwealth v. Henley, 63 Mass. App. Ct. 1, 5-6 (2005); or where the vehicle is parked on private property without the permission of the property owner as a result of a police stop, to spare the owner the burden of having to cause the vehicle to be towed, see Ellerbe, supra at 770, 776 ("it is appropriate for the police to spare the private parking lot owner the burden of dealing with the vehicle's presence when the driver has been arrested").  Where the police's true purpose for searching the vehicle is investigative, the seizure of the vehicle may not be justified as a precursor to an inventory search, and must instead be justified as an investigative search.  See Commonwealth v. White, 469 Mass. 96, 102 (2014); Commonwealth v. Vuthy Seng, 436 Mass. 537, 551-555 & n.16, cert. denied, 537 U.S. 942 (2002), S.C., 445 Mass. 536 (2005) and 456

Mass. 490 (2010).  See also Commonwealth v. Rostad, 410 Mass. 618, 620 (1991) (inventory search "may not be allowed to become a cover or pretext for an investigative search"); Commonwealth v. Ortiz, 88 Mass. App. Ct. 573, 576-577 (2015).

If the vehicle was seized for a legitimate purpose, we look next to whether the seizure was reasonably necessary based on the totality of the evidence.  See Eddington, 459 Mass. at 108-110.  Where the police arrest the driver of a vehicle, we consider whether the vehicle reasonably could have been left in the place it was parked and therefore need not have been seized. An important factor here is whether the driver chose where to park the vehicle or whether the police stopped a moving vehicle and caused it to be parked at a location the driver otherwise would not have chosen.  Where the driver chose the location to park the vehicle, and parked it lawfully on the street, in the owner's driveway, or in a parking lot open to the public without limitation, the Commonwealth must show that it would have been unreasonable to have allowed the vehicle to remain where the driver chose to park it.  See Brinson, 440 Mass. at 610 ("the government may not impound and conduct an inventory search of a car based on the arrest of the owner, where the car was lawfully parked in a privately owned parking lot [by the owner] and there was no evidence that the car constituted a safety hazard or was at risk of theft or vandalism").  But where the vehicle was

stopped by the police and the driver arrested, the police are responsible both for the location of the vehicle and for depriving the vehicle of its driver, and therefore might be held responsible if the vehicle's location created a risk to public safety or left the vehicle vulnerable to vandalism or theft. Id. at 613-614, citing People v. Krezen, 427 Mich. 681, 687-692 (1986) (potential police liability for failure to impound can be considered in decision to seize). See generally 3 W.R. LaFave, Search and Seizure § 7.3(c), at 809-815 (5th ed. 2012).

Where the vehicle reasonably could not have been left in the place it was parked, we consider whether the owner of the vehicle or a person clearly authorized by the owner to drive the vehicle was present and lawfully able to drive the vehicle away, that is, whether the vehicle was properly registered and the person was licensed to drive and neither under arrest nor under the influence of drugs or alcohol. Where the owner or authorized driver, for whatever reason, was unable to drive the vehicle away, we consider whether the owner or authorized driver offered the police a lawful and practical alternative to impoundment of the vehicle. See Ellerbe, 430 Mass. at 774 ("the police had no practical available alternative to towing the vehicle, and thus no discretion to exercise"); Commonwealth v. Caceres, 413 Mass. 749, 751 (1992) ("We conclude that there was no practical available alternative to the removal of the vehicle

and to an inventory search of it.  The defendant did not suggest or request any alternative to removal of the vehicle").

We have no litmus test to gauge whether the alternative offered by the owner or authorized driver was lawful and practical and therefore an alternative the police reasonably should have allowed instead of impoundment; the determination depends on the totality of the circumstances.  We have, however, made clear that the police have no obligation to locate or telephone the registered owner to determine his or her wishes, Eddington, 459 Mass. at 109, or to wait with the vehicle until a licensed driver can be located, Ellerbe, 430 Mass. at 776.

In this case, we agree with the judge that the decision of the police to impound the vehicle was unreasonable.  The police did not question that Violet was authorized by his girl friend to drive the vehicle, and it was properly registered to her.  Under the circumstances, Violet's request that the police leave the vehicle where he parked it until his girl friend could retrieve it was lawful and practical.  Before the vehicle was impounded, Violet had been arrested only for shoplifting, a crime that was punishable by a fine of no more than $250, G. L. c. 266, § 30A, so it was likely that he would be released on bail after he was booked and could then notify his girl friend to retrieve the vehicle or retrieve it himself.  Even if he were not quickly released on bail, he was legally entitled to make a

telephone call at the police station. See G. L. c. 276, § 33A. During this telephone call, he could notify his girl friend of the need to pick up her vehicle or ask another person to notify her. Even if he were unable to reach her and was not released on bail, there was no evidence that the vehicle was at significant risk of being stolen or vandalized if it remained overnight in the department store lot. Nor, where it was parked properly in the lot, did it pose any public safety risk or any obstruction to other vehicles. Nor was there evidence that the lot was the private property of the department store; it was described simply as a "public way" at the hearing. Even if the lot were owned by the department store, no weight can be given to the request of the department store manager to tow the vehicle from the lot, because there is no evidence to support a finding that the request occurred before the officers began the inventory search. A seizure of a vehicle cannot be justified by information learned from the seizure and subsequent search of that vehicle. See Commonwealth v. Thibeau, 384 Mass. 762, 763-764 (1981).

The Commonwealth contends that the police need only consider the request for an alternate disposition of the vehicle where the owner of the vehicle is present and proposes the alternate disposition. Such a per se rule would undermine the nature of the impoundment decision, which requires the police to

act reasonably and "necessitates a case-by-case analysis that takes into account the numerous and varied situations in which decisions to impound are made."  Eddington, 459 Mass. at 109 n.12.  Here, the police did not question Violet's assertion that he was authorized by the owner of the vehicle to drive it, and there were no circumstances that reasonably should have caused them to question that assertion.  The fact that the owner of the vehicle was not present when the driver was arrested is not sufficient by itself to justify impoundment of the vehicle and the consequent inventory search.  See id. at 111 n.14.

Conclusion.  Because we conclude that the impoundment was unreasonable and, thus, unconstitutional, we affirm the order of the motion judge suppressing the fruits of the inventory search of the motor vehicle.

So ordered.