NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12128


COMMONWEALTH  vs.  ATREYO CROWLEY-CHESTER.


March 9, 2017.


Constitutional Law, Search and seizure.  Search and Seizure,
    Motor vehicle, Impoundment of vehicle.


        The defendant, Atreyo Crowley-Chester, was charged in a
complaint with carrying a firearm without a license, in
violation of G. L. c. 269, § 10 (a), and possession of a firearm
or ammunition without a firearm identification card, in
violation of G. L. c. 269, § 10 (h).  The charges stem from the
recovery of a loaded firearm from a motor vehicle after police
officers impounded and conducted an inventory search of the
vehicle.  The defendant filed a motion to suppress, which a
judge in the District Court allowed after an evidentiary
hearing.  A single justice of this court granted the
Commonwealth leave to pursue an interlocutory appeal, and the
Appeals Court reversed.  See Commonwealth v. Crowley-Chester, 86
Mass. App. Ct. 804 (2015).  The case is now before this court on
further appellate review.[1]  Because we conclude that the motion
judge properly allowed the motion to suppress, we affirm.

_____

        [1] The defendant initially filed his application for further
appellate review in January, 2015.  In the application he
argued, among other things, that the Appeals Court had engaged
in improper appellate fact finding.  In light of our decisions
in Commonwealth v. Jones-Pannell, 472 Mass. 429 (2015), and
Commonwealth v. Douglas, 472 Mass. 439 (2015), which address
that issue and which we decided while the defendant's
application for further review was pending, we denied the
application without prejudice and remanded the case to the
Appeals Court for reconsideration.  The Appeals Court
reconsidered the appeal and reached the same result as it had

Background.  At approximately 3 A.M. on March 15, 2011, Springfield police Officers Matthew Longo and Jose Canini were on routine patrol on Williams Street when they observed a Honda Accord automobile parked on the street in front of a vacant lot and across the street from a church.  The vehicle's engine was running, and its lights were off.[2]  Using the police cruiser's spotlight, Officer Longo observed two individuals seated in the front of the vehicle, both of whom appeared to be making furtive type movements.  The defendant was the front seat passenger.  The officers approached the vehicle and, after observing an unknown object in the defendant's hand and a knife in the center console, ordered the driver out of the vehicle.  When the driver got out of the vehicle, a white rock-like substance fell to the ground.  Officer Longo recognized the object to be consistent with "crack" cocaine, and the driver was placed under arrest.  At this point, the defendant was also ordered out of the vehicle.  After the defendant got out of the vehicle, Officer Longo retrieved and secured the knife.[3]

The driver then asked that the defendant, who was not yet under arrest and who was free to leave the scene, be allowed to drive the vehicle.  Officer Longo determined, however, that the defendant did not have a driver's license.  The officers then decided to impound the vehicle.  In the course of the resultant inventory search, Officer Longo found a backpack containing a firearm.  The backpack, which had the name "Atreyo" written on it, also contained a pay stub with the defendant's name.

At the hearing on the motion to suppress, the defendant introduced in evidence a computer-aided dispatch (CAD) log of telephone calls made to the Springfield police department reporting criminal activity for three streets in the area

---

previously, reversing the order allowing the motion to suppress. The defendant then sought further appellate review again, and we allowed his application.

[2] There is no indication in the record as to how long the vehicle had been parked in that location or how long the engine had been running.  Officer Longo testified that it was cold and that he knew that the engine was running because he could see exhaust from the vehicle.

[3] The knife recovered from the vehicle was a Swiss Army knife, presumably something that the officers were able to ascertain as soon as they retrieved the knife, if not before.

around, and including, Williams Street.  The log included activity for a six-month period dating back from the date of the incident and reflected only telephone calls concerning criminal activity; it did not include criminal activity that might have been otherwise reported to the police or observed in person by a police officer.

Discussion.  The motion judge concluded that the police officers' threshold inquiry of, and subsequent exit order to, the driver and the defendant were proper.  The defendant does not argue otherwise.  Rather, he focuses on the officers' decision to impound and inventory the motor vehicle.  Our starting point, then, and our primary concern, is whether the decision to impound -- to seize -- the vehicle was lawful.  See, e.g., Commonwealth v. Oliveira, 474 Mass. 10, 13 (2016), citing Commonwealth v. Eddington, 459 Mass. 102, 108 (2011).  More specifically, the question is whether impoundment "was reasonably necessary based on the totality of the evidence." Oliveira, supra at 14, citing Eddington, supra at 108-110.[4]  In reviewing the judge's decision on this point, "we accept [his] subsidiary findings of fact absent clear error 'but conduct an independent review of his ultimate findings and conclusions of law'" (citation omitted).  Eddington, supra at 104, and cases cited.

The Commonwealth argues that impoundment was reasonable because it was 3 A.M. and the vehicle was parked in a "high crime" area.[5]  Officer Longo testified that the crimes in the

---

[4] "Where the police's true purpose for searching the vehicle is investigative, the seizure of the vehicle may not be justified as a precursor to an inventory search, and must instead be justified as an investigative search."  Commonwealth v. Oliveira, 474 Mass. 10, 14 (2016), and cases cited.  See Commonwealth v. Ortiz, 88 Mass. App. Ct. 573, 575-576 (2015) (discussing difference between investigatory search and inventory search).  The defendant in this case made no claim, and the judge did not find, that the police impounded the motor vehicle as a pretext for the true purpose of conducting an investigatory search.

[5] In his decision, the judge stated that the Commonwealth failed to meet its burden to establish that it was "necessary" to impound the vehicle.  The proper standard is not whether an impoundment was absolutely necessary but whether it was "reasonably necessary," as set forth in Oliveira, 474 Mass. at 14.  Although the judge used only the word "necessary" in his

area included drug and firearm offenses, gang activity, domestic violence, and breaking and entering of both motor vehicles and businesses. What matters for purposes of considering the propriety of a motor vehicle impoundment, however, is not the over-all frequency of crime in the vicinity but the risk of vandalism, theft, or a break-in to the motor vehicle. The number and frequency of other types of crimes does not directly bear on the question whether impoundment is reasonably necessary to safeguard the vehicle or to protect the public. Here, the judge noted that the CAD log contains only one entry indicating such a motor vehicle-related crime.[6]

Furthermore, in prior cases in which impoundment was deemed reasonable because the vehicle was located in a "high crime" area, other factors have been at play. In the Eddington case, for example, where the motor vehicle stop and subsequent impoundment took place in a "high crime" neighborhood, the police dictated the location of the stop (by signaling the driver to pull over). Eddington, 459 Mass. at 104-105, 109. Here, by contrast, the vehicle was already stopped, and legally parked, before the police became involved, i.e., it was in a location of the driver's choosing, rather than in a location dictated by the police. Similarly, in Commonwealth v. Ellerbe, 430 Mass. 769, 775 (2000), which also involved a neighborhood where motor vehicle crimes were prevalent, the vehicle was parked in a private lot, not on a public street. We noted that it was "appropriate for the police to spare the private parking lot owner the burden of dealing with the vehicle's presence when the driver ha[d] been arrested." Id. at 776.

---

written decision, he used the word "reasonable" throughout the hearing when addressing the propriety of the officers' decision to approach the vehicle and to issue the exit order. It is evident, and we are satisfied, that he knew that the concerns here relate to the reasonableness of the officers' actions, and that this is what he had in mind when he reached his decision to allow the motion to suppress.

[6] Although a police officer trying to determine whether to impound a motor vehicle cannot be expected to know the exact number or nature of all vehicle-related crimes that have occurred in a particular neighborhood, an officer who believes an area to be "high crime" should have at least some general knowledge on this point sufficient to inform whether impoundment is reasonably necessary to safeguard the vehicle or protect the public.

No such circumstances were present here. The vehicle was legally parked on a city street in a location of the driver's choosing. The neighborhood was at least partially residential and other vehicles were also lawfully parked on the same street. As we cautioned in the Eddington case, "to justify a decision to impound, the police need more than the circumstance of a vehicle being stopped, and its driver arrested, in a 'high crime' area." Eddington, 459 Mass. at 106 n.10. Because the police did not have more than that here, it was not reasonable for them to impound the vehicle for the purpose of protecting it from theft or vandalism.

The judge based his decision that impoundment was improper solely on his findings that the vehicle was not in danger of damage or theft. As the Appeals Court noted, he did not address the public safety rationale -- that is, whether there was any concern that there might be dangerous items in the vehicle from which the public needed protecting. See Chester-Crowley, 86 Mass. App. Ct. at 808 n.6. The Commonwealth did not raise the public safety issue at the hearing on the motion to suppress (and mentioned it only in passing in its written opposition to the motion in the trial court) and focused instead on the "high crime" issue. The judge's similar focus is thus not surprising.

In any event, to the extent that the Commonwealth argues in this court that impoundment was warranted to protect the public because the officers recovered a knife from the vehicle, we find the argument unavailing. The Commonwealth does not argue that the mere presence of the Swiss Army knife in the vehicle by itself created a threat to public safety. Indeed, because the officers had already retrieved and secured the knife prior to making the decision to impound, such an argument would not be plausible. Although public safety is unquestionably a legitimate concern, it is not enough to say, as the Commonwealth does, that because a Swiss Army knife was found in the vehicle, the vehicle "could have" contained other weapons. The Commonwealth has not developed the public safety argument further, and we do not find that impoundment on that basis would have been reasonable.[7]

                              Order allowing motion to
                                suppress affirmed.

---

[7] Because we conclude that the police should not have impounded the vehicle, we need not consider whether the resulting inventory search was properly conducted.

Patrick A. Michaud for the defendant.

Cynthia Cullen Payne, Assistant District Attorney, for the Commonwealth.