NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-344

COMMONWEALTH

vs.

RADHAME DELACRUZ.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Convicted by a jury of carrying a firearm without a license, G. L. c. 269, § 10 (a), the defendant appeals. He argues that during a traffic stop police improperly searched the trunk of his Honda, and a Boston Municipal Court judge (motion judge) erred in concluding that the search was proper either as an inventory search or under the automobile exception to the warrant requirement. Because police did not have a basis to believe that something in the trunk posed a danger to the public, the search was not justifiable under the Boston police inventory policy. Because police did not have probable cause that the trunk contained evidence of a crime, the search was not

justifiable under the automobile exception.  Accordingly, we reverse.

Background.  We set forth the facts found by the motion judge based on the evidence at the suppression hearing, supplemented by our own review of uncontroverted documentary evidence including the police body-worn camera video footage. See Commonwealth v. Yusuf, 488 Mass. 379, 380-381 (2021).

At about 3:30 P.M. on June 13, 2020, Boston police Officer Kimber Taylor and his partner were on patrol in the West Roxbury section of Boston.  The officers saw a silver Honda, checked its license plate in the criminal justice information system database, and learned that its owner had an outstanding warrant. The officers initiated a traffic stop, and the Honda pulled over to the side of the travel lane on a street with a single lane in each direction.  The defendant, the subject of the outstanding warrant, was the driver and sole occupant of the Honda.  After he produced his driver's license and registration, the police ordered him to exit the Honda, told him that the reason for the stop was the outstanding warrant, and said he would be placed under arrest.

The defendant asked if he could call somebody to come pick up the Honda.  Officer Taylor asked how long the person would take to arrive, and the defendant replied, "They're probably, like, less than fifteen minutes away."  Officer Taylor agreed to

2

let the defendant call someone.  While the defendant was making a call on his cell phone, this exchange took place:

> Officer Taylor:  "Is there anything in the car?  Because I'm going to check the car."

> Defendant:  "Huh?"

> Officer Taylor:  "I'm going to frisk the car, is there anything in the car?"

> Defendant:  "Honestly, I have just weed in there.  You can't check my trunk, you need a warrant for that, right?"

> Officer Taylor:  "So is there something in the trunk you're hiding from me?"

> Defendant:  (on phone) "Yo, bro can you ask your mom to come get . . . Can you tell your mom to come pick my car up, bro, before they tow my car, bro, please . . . I'm going to send you my location . . ."

> Officer Taylor:  "If we tow the car, we can search the trunk, okay, just so you know.  I might just tow it just so I could get access to the trunk."

During the exchange, the defendant became nervous.  As the defendant continued speaking to someone on his cell phone, the exchange continued:

> Officer Taylor:  "I can tell you right now I could tow your car and check your trunk.  I don't need a warrant for the trunk if I'm towing the car.  So if there's something in the trunk you're trying to hide, I could go and get access to it."

> Defendant:  "I have something in the trunk."

> Officer Taylor:  "What's in the trunk?"

> Defendant:  "First of all, don't you need a warrant?  You need a warrant for this, don't you?"

> Officer Taylor:  "Not if I'm towing your car, so I'm going to tow the car, so we're going to do it that way.  We're

3

going to tow the car. Turn around. Turn around. Stand up."

Defendant: "Why are you towing the car? All right, so could I just tell you what I have in the trunk?"

Officer Taylor: "What do you have in the trunk?"

Defendant: "You're going to look anyways, so, could you just look, and I could send my [location] to my friend, please?"

Officer Taylor: "What's in the trunk? So tell me what's in the trunk, sir."

Defendant: "I'm going to text to my friend and tell him my location. That's all that I want to do. Other than that, you could figure out what else is in the trunk on your own, brother, all right?"

The defendant never did tell the officers what the "something" was that was in the trunk of the Honda.

The police handcuffed the defendant and placed him in the back seat of the police cruiser. The police searched the Honda's passenger compartment and its trunk. In the trunk, police found a black backpack and a black "fanny pack." Officer Taylor frisked the outside of both bags. Upon touching the fanny pack, he felt the shape of a firearm. A few minutes after police discovered the firearm, the defendant's friends arrived.

The defendant moved to suppress the firearm. The motion judge denied the motion, concluding that the search was proper either as an inventory search or pursuant to the automobile exception to the warrant requirement. After a trial before a

4

different judge, a jury convicted the defendant of carrying a firearm without a license.  The defendant appeals.

Discussion.  "In reviewing a decision on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error but conduct an independent review of . . . [her] ultimate findings and conclusions of law" (quotations and citation omitted).  Commonwealth v. Goncalves-Mendez, 484 Mass. 80, 83 (2020).  "We review video footage independently."  Commonwealth v. Morris, 492 Mass. 498, 502 (2023).

a.  Inventory search.  "The lawfulness of an inventory search turns on the threshold propriety of the vehicle's impoundment, and the Commonwealth bears the burden of proving the constitutionality of both."  Commonwealth v. Ehiabhi, 478 Mass. 154, 164-165 (2017).  First, "[i]mpoundment must be undertaken for a legitimate, noninvestigative purpose, and must be 'reasonably necessary based on the totality of the evidence.'"  Goncalves-Mendez, 484 Mass. at 83, quoting Commonwealth v. Oliveira, 474 Mass. 10, 13-14 (2016).  If an arrestee operator requests an alternative to impoundment, "the police must allow it if it is reasonable and practical."  Commonwealth v. Lek, 99 Mass. App. Ct. 199, 204 (2021).  Second, "an inventory search must hew closely to written police procedures and may not conceal an investigatory motive."  Ehiabhi, supra at 164.

5

The defendant argues that the search was not a proper inventory search because it was "tainted with an investigatory purpose." "In evaluating whether the seizure of a vehicle was reasonable, we look first to the law enforcement officer's true purpose for seizing it." Oliveira, 474 Mass. at 13. As set forth above, Officer Taylor said to the defendant, "I might just tow [the car] just so I could get access to the trunk." We agree with the defendant that those comments pointed to an investigatory purpose. Cf. Commonwealth v. Ortiz, 88 Mass. App. Ct. 573, 574, 576 (2015) (inventory search had investigatory pretext; at direction of Federal agents, State police conducted traffic stop and arrest of defendant for "sole purpose of impounding and searching the defendant's vehicle").

At the suppression hearing, Officer Taylor testified that his reason for searching the Honda was that he "didn't want the person who was taking the motor vehicle to get hurt [by] anything . . . inside the motor vehicle." From that testimony, the motion judge concluded that the officer's purpose was to protect the police and public by "ensuring that there were no weapons or other dangerous materials" in the Honda. But, even if Officer Taylor's comments at the traffic stop did not reveal his investigatory purpose, police had no information that whatever was in the defendant's trunk was a weapon or dangerous material. The defendant's refusal to tell police what was in

6

his trunk did not give rise to any reason to believe that whatever it did contain was dangerous.  Contrast Commonwealth v. Rosario-Santiago, 96 Mass. App. Ct. 166, 176-177 (2019) (trooper's suspicions that defendant was involved in drug trafficking, based on information including Federal narcotics charges, did not invalidate otherwise proper inventory search).[1]

As for the second part of the test, the search did not "hew closely" to the Boston police inventory policy, Ehiabhi, 478 Mass. at 164.  That policy required police to have a vehicle towed "when there is a danger to public safety; a danger to the vehicle being left unattended; a danger of theft or vandalism; or the possibility of false claims."  As discussed, the defendant's refusal to say what was in the Honda's trunk did not give the police reason to believe that whatever it was posed a danger to public safety; nor did it give rise to any of the

---

[1] To the extent that the defendant argues that once Officer Taylor agreed to allow him to call an alternate driver to come take the Honda, the officer could not change his mind, we are not persuaded.  Circumstances may change and make it no longer "reasonable and practical," Lek, 99 Mass. App. Ct. at 204, for police to wait for an alternate driver.  Massachusetts courts have not held that police must wait for an alternate driver to arrive before impounding a vehicle.  See Oliveira, 474 Mass. at 15 ("the police have no obligation . . . to wait with the vehicle until a licensed driver can be located").  Contrast Goncalves-Mendez, 484 Mass. at 85 (where passenger is present who could lawfully drive vehicle, improper for police to impound it without first offering that option to driver).

other reasons to impound a vehicle, such as the possibility of theft or false claims.

b. Automobile exception. The motion judge ruled that, in the alternative, the police search of the Honda's trunk was permissible under the automobile exception to the warrant requirement because police had probable cause that it contained evidence of a crime.

"Due to the inherent mobility of an automobile, and the owner's reduced expectation of privacy when stopped on a public road, police are permitted to search a vehicle based upon probable cause to believe that it contains evidence of a crime." Commonwealth v. Davis, 481 Mass. 210, 220 (2019). See Commonwealth v. Raspberry, 93 Mass. App. Ct. 633, 643 (2018) (automobile exception may extend to vehicle's trunk). "The existence of probable cause depends on whether the facts and circumstances within the officer's knowledge at the time of making the search or seizure were sufficient to warrant a prudent [person] in believing that the defendant had committed, or was committing, an offense" (citation omitted). Commonwealth v. Hernandez, 473 Mass. 379, 383 (2015). What is required is a showing that the police "entertained rationally 'more than a suspicion of criminal involvement, something definite and substantial, but not a prima facie case of the commission of a

8

crime'" (citation omitted).  Commonwealth v. Santaliz, 413 Mass.
238, 241 (1992).

The motion judge found that "[t]he insistence by the
defendant that police not open his trunk significantly changed
the dynamic and raised legitimate safety concerns that the
defendant was transporting weapons, contraband or other evidence
of criminal activity."  We are not persuaded.  The defendant's
refusal to disclose what was in his trunk, in conjunction with
his nervousness, did not give rise to probable cause that the
Honda contained evidence of a crime.  See Commonwealth v.
Sheridan, 470 Mass. 752, 758-759 (2015), quoting Commonwealth v.
Cruz, 459 Mass. 459, 468 (2011) ("It is common" and "not
necessarily indicative of criminality" for individual "to appear
nervous during even a mundane encounter with police").[2]

Accordingly, the order denying the motion to suppress is

_____

[2] We do not reach the Commonwealth's argument that the
search would be justified pursuant to the police community
caretaking function.  See Commonwealth v. Demos D., 105 Mass.
App. Ct. 193, 198-199 (2025).  Because the Commonwealth did not
make that argument in the trial court, we do not have the
benefit of the motion judge's findings on the issue.  See
Commonwealth v. Santos, 95 Mass. App. Ct. 791, 796 (2019) (court
declined to reach merits of waived claim).

9

reversed, the judgment is reversed, the verdict is set aside, and judgment shall enter for the defendant.

So ordered.

By the Court (Ditkoff, Grant & Toone, JJ.[3]),

Clerk

Entered:  April 4, 2025.

---

[3] The panelists are listed in order of seniority.