NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-687

COMMONWEALTH

vs.

GIOVANNI BURGOS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After the defendant, Giovanni Burgos, was charged with failing to identify himself to a police officer, various firearm and drug-related offenses, and a motor vehicle infraction, he moved to suppress evidence seized from the vehicle that he was driving at the time of his arrest. The defendant argued that the officers failed to follow the written Massachusetts State Police inventory and towing policies and that the Commonwealth failed to meet its burden of proving that the warrantless search of the defendant's car was lawful. After an evidentiary hearing, the motion to suppress was denied.[1]

---

[1] The defendant filed an application to the single justice of the Supreme Judicial Court seeking leave to pursue an

Thereafter, the defendant entered into a conditional plea agreement, pursuant to Mass. R. Crim. P. 12 (b) (6), as appearing in 482 Mass. 1501 (2019), pleading guilty to possession of a firearm without a firearm identification (FID) card, in violation of G. L. c. 269, § 10 (h) (1); possession of ammunition without an FID card, in violation of G. L. c. 269, § 10 (h) (1); possession of a class B controlled substance, in violation of G. L. c. 94C, § 34; and possession of a class A controlled substance, in violation of G. L. c. 94C, § 34, while reserving his right to appeal from the denial of his motion to suppress.[2]  We reverse.

Background.  We summarize the facts as they could have been found by the motion judge after an evidentiary hearing on the motion to suppress, reserving certain facts for later discussion.  See Commonwealth v. Lewis, 106 Mass. App. Ct. 343, 344 (2025).

On July 24, 2020, at approximately 8 P.M., Massachusetts State Police Sergeant Scott Davis stopped a vehicle travelling above the speed limit on Interstate 391.  Upon request, the defendant, who was driving the vehicle and was the sole

_____

interlocutory appeal from the motion judge's order.  The application was denied.

[2] The Commonwealth entered a nolle prosequi on four other counts, and the defendant was found not responsible on one other count.

occupant, gave Sergeant Davis the vehicle's registration and verbally provided the name "George Cologne," a date of birth, and an address, telling Sergeant Davis that "he didn't have any ID on him." When Sergeant Davis reviewed the registry-generated picture of George Cologne on his laptop in his cruiser, he thought that there were "some discrepancies between what the [defendant] looked like and the picture." As a result, Sergeant Davis called the barracks "for another car, just for another set of eyes."

While Sergeant Davis waited for another trooper to arrive, he asked the defendant questions about Cologne's criminal history to attempt to confirm his identity. Despite Cologne's significant criminal history, the defendant denied ever having been arrested. The defendant also stated that he had never had a restraining order issued against him, but when informed by Sergeant Davis that Cologne had an active order against him, the defendant claimed to recall the order but incorrectly named the plaintiff. Trooper Daniel Dziminski and a trooper in training arrived on the scene. Sergeant Davis showed them the registry-generated photograph of Cologne, and all of the officers agreed that the defendant did not resemble Cologne. The troopers placed the defendant under arrest for failure to identify himself and brought him to the police cruiser.

3

Because the vehicle driven by the defendant was parked in the breakdown lane of the interstate and the defendant was the only person in the car, the troopers decided to have it towed pursuant to the Department of State Police General Order TRF-09 (towing policy). Prior to towing, the troopers saw and searched a bag located on the front passenger seat which contained narcotics and a firearm.

At the motion to suppress, the defendant argued that the Commonwealth failed to meet its burden to prove that the search of the vehicle was a lawful inventory search because the troopers failed to follow the written towing policy or the Department of State Police General Order TRF-10 (inventory policy). We agree.

Discussion. "In reviewing a decision on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error but conduct an independent review of his [or her] ultimate findings and conclusions of law" (quotation and citation omitted). Commonwealth v. Goncalves-Mendez, 484 Mass. 80, 83 (2020). In this case, the judge denied the motion in a margin order which, in its entirety, read, "the Court credits the officers['] testimony, defendant's motion is denied." This margin order does not contain sufficient information to allow us to determine what findings of fact were made.

4

1.  Towing.  The Commonwealth argues that the warrantless search of the vehicle was proper as an inventory search. Therefore, we begin our analysis by determining whether the troopers' decision to tow the car was reasonable and that there were no lawful, practical alternatives to impoundment.  See Commonwealth v. Oliveira, 474 Mass. 10, 15 (2016).

After a driver is arrested, a vehicle may be impounded for one of four purposes:

> "to protect the vehicle and its contents from theft or vandalism; to protect the public from dangerous items that might be in the vehicle; to protect public safety where the vehicle, as parked, creates a dangerous condition; or where the vehicle is parked on private property without the permission of the property owner as a result of a police stop, to spare the owner the burden of having to cause the vehicle to be towed" (citations omitted).

Id. at 13.  If the vehicle is impounded for one of these legitimate purposes, we must determine whether the seizure was reasonably necessary under the circumstances.  See id.  In this case, the vehicle, parked in the breakdown lane of an interstate highway in the dark, was a safety hazard to other drivers.  With no passenger available to take possession of the vehicle, the impoundment was reasonably necessary.  See Commonwealth v. Henley, 63 Mass. App. Ct. 1, 5-6 (2005) (where "a motor vehicle was stopped in the breakdown lane of an interstate highway at 2:00 A.M. without an authorized operator present and able to remove it from the roadway[,] . . . . the police had no

5

discretion to exercise because the situation posed a safety hazard that made towing the only practical available alternative").  See also Commonwealth v. Eddington, 459 Mass. 102, 109-110 (2011) (vehicle was reasonably impounded where driver was under arrest, passenger was intoxicated and "not known to be authorized to drive" car, and "police were not constitutionally obligated to contact" owner who was not present).

The defendant argues that the Commonwealth failed to prove that the impoundment was reasonably necessary because the officers did not inform the defendant that the vehicle was being towed and failed to follow the portion of the towing policy that requires officers to "inquire if there is a preference for a particular tow company" and to "honor[]" that preference.  We disagree.  While in certain circumstances it is best practice for officers to inform an authorized driver that a vehicle is being towed and give the driver an opportunity to provide an alternative to having the car towed, this practice presumes the presence of an authorized driver and applies only "where police are aware that a passenger could lawfully assume custody."  See Goncalves-Mendez, 484 Mass. at 85 n.8; see also Commonwealth v. Lek, 99 Mass. App. Ct. 199, 204 (2021) ("Our courts . . . have not said that officers must ask a driver who is being arrested whether he would like to direct the officer to dispose of the

vehicle in some lawful manner other than impoundment").  Here, because the defendant was not the owner of the car and had provided false identifying information, the police could not determine whether the defendant was an authorized driver and therefore were not obligated to inform him that the car would be towed, or to ask whether he had a preferred towing company.  See Commonwealth v. Ferrara, 496 Mass. 483, 486 (2025) ("no affirmative duty on law enforcement to offer alternatives to impoundment").  Also, no passenger was present.  Under these circumstances, it was reasonable for the officers to conclude that no lawful, practical alternative to towing was available, and the towing of the vehicle was reasonably necessary.

2.  Inventory search.  We now turn to whether the inventory search of the vehicle was lawful.  An inventory search can serve "three separate legitimate purposes, . . . . to protect the vehicle and its contents from the threat of theft or vandalism; to protect the police and the tow company from false claims; and to protect the public from dangerous items that might have been left in a vehicle".  Commonwealth v. Davis, 481 Mass. 210, 218 (2019).  "Unlike other types of searches, an inventory search is administrative, and the decision to conduct an inventory search must not be for investigatory purposes; the decision must be objectively reasonable, and the search must be conducted according to standard written procedures."  Id. at 219.  The

7

State Police inventory policy requires officers to complete an inventory of "[t]he interior of the vehicle; [t]he glove compartment and trunk (unless they are locked and there is no key available); and [t]he exterior of the vehicle for missing or damaged parts."  Further, the policy requires that the officers complete and file an inventory form to document the contents of the vehicle.  At the motion to suppress, the Commonwealth has the burden to prove that the inventory search was done for a legitimate purpose and not for an investigatory purpose.  See Commonwealth v. Rosario-Santiago, 96 Mass. App. Ct. 166, 175 (2019).  The defendant contends that insufficient evidence was presented to prove that the officers conducted an inventory search and the search was, therefore, unlawful.  We agree.

Both Sergeant Davis and Trooper Dziminski testified in conclusory fashion that an inventory search was performed. However, the only testimony detailing the specifics of the search indicated that Sergeant Davis "started on the passenger side" and that Trooper Dziminiski "started inventorying on the driver's side."  Thereafter, Sergeant Davis opened a bag "on the front passenger seat" and found various narcotics inside.  He handed the bag to Trooper Dziminski who discovered that it also contained a firearm.  Notably, neither trooper testified to searching any other areas of the vehicle.  Moreover, Trooper Dziminski testified that there was no documentation of damage to

8

the car prior to towing, nor was the inventory search form filed as was required by the inventory policy.  While performing the inventory search prior to impoundment was the appropriate course of action pursuant to the policy, we conclude that the Commonwealth did not produce sufficient facts to support a determination that an inventory search, in fact, occurred.  Accordingly, we decline to affirm the judge's ruling.  See Commonwealth v. Buckley, 478 Mass. 861, 872 (2018) ("the burden rests with the Commonwealth to demonstrate that the search 'was conducted for some legitimate police purpose other than a search for evidence.'. . .  From the start, then, consideration of an officer's 'purpose' for conducting the search is relevant to an assessment of the lawfulness of the search itself").[3]

---

[3] The failure to file the forms required by the inventory policy is not an independent basis for suppression; however, the officers' general assertions that an inventory search occurred is insufficient to support the conclusion.  See Commonwealth v. Torres, 85 Mass. App. Ct. 51, 55 (2014) ("if the Commonwealth is able to demonstrate that its search was both justified and otherwise properly executed, then excluding the evidence based on after-the-fact procedural deficiencies would not serve the purpose for which the exclusionary rule was established").

Accordingly, the order denying the motion to suppress is reversed and the matter is remanded for further proceedings.

<u>So ordered</u>.

By the Court (Rubin, Desmond & Allen, JJ.[4]),

Clerk

Entered: May 22, 2026.

---

[4] The panelists are listed in order of seniority.